DISABILITY RIGHTS ADVOCATES
SIDNEY WOLINSKY (CA Bar No. 33716)
swolinsky@dralegal.org
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:  (510) 665-8644
Facsimile:  (510) 665-8511
TTY:            (510) 665-8716

DISABILITY RIGHTS LEGAL CENTER
PAULA PEARLMAN (CA Bar No. 109038)
Paula.pearlman@lls.edu
SHAWNA L. PARKS (CA Bar No. 208301)
shawna.parks@lls.edu
DEBRA PATKIN (CA Bar No. 252197)
Debra.patkin@lls.edu
919 Albany Street
Los Angeles, CA 90015
Telephone:  (213) 736-1031
Facsimile:  (213) 736-1428
TTY:            (213) 736-8310

Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,

Defendants.

Case No.: CV09-0287 CBM (RZx)

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF CIVIL RIGHTS & DISCRIMINATION AGAINST PEOPLE WITH DISABILITIES: AMERICANS WITH DISABILITIES ACT; SECTION 504 OF THE REHABILITATION ACT OF 1973; CALIFORNIA CIVIL CODE § 54, *et seq.*; CALIFORNIA GOVERNMENT CODE § 11135, *et seq.***

FILED
2009 JAN 14  AM 10: 24
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

Plaintiffs, by their attorneys Disability Rights Advocates and Disability Rights Legal Center, as and for their complaint against Defendants, allege as follows:

## JURISDICTION AND VENUE

1.     This is an action for declaratory and injunctive relief, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as California Civil Code § 54, *et seq.* and California Government Code § 11135.

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for the federal law claims, and it has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because: (i) the organizational Plaintiff CALIF has members within the District; (ii) Plaintiff Audrey Harthorn resides in the District; (iii) Defendants are all located within the District; and (iv) the acts and omissions giving rise to this claim have occurred within the District.

## INTRODUCTION

4.     This action arises out of discrimination by Defendants towards the approximately 500,000 individuals with disabilities who live in the city of Los Angeles.[1]  Defendants have neglected to plan to meet the unique needs of residents with disabilities during an emergency.

5.     The types of disasters that could occur at any time in Los Angeles are legion.  The Southern California Earthquake Center has predicted an 80-90% chance of an earthquake of magnitude 7.0 or higher striking Southern California in the next fifteen years.  Los Angeles's climate and geography also render it

---

[1] According to the 2006 American Community Survey based on the most recent U.S. Census, 445,639 residents have disabilities.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  particularly susceptible to other natural disasters like wildfires and landslides, and
2  its status as a major metropolitan center makes it a likely target for a future terrorist
3  attack.

4        6.     The City of Los Angeles ("City") and County of Los Angeles
5  ("County") are well aware of the area's vulnerability to disaster, as evidenced by
6  the County's Operational Area Emergency Response Plan, which states: "The
7  County of Los Angeles is located in one of the most disaster-prone areas of the
8  United States and is subject to exceptional earthquake hazard.  The County has
9  also experienced other types of major emergencies such as wildland fires, floods
10  and civil unrest, and any of these could recur at any time."

11        7.     Despite awareness of these exceptional risks, both the City and the
12  County have utterly failed to assure that people with disabilities will be protected
13  when the next disaster strikes Southern California.  Specifically, no agency or
14  organization with expertise in disability issues is represented on the City's
15  Emergency Operations Board, and the section of the City's Emergency Operations
16  Master Plan concerned with disseminating information to the public makes no
17  mention of how such information will be communicated in formats accessible to
18  people with sensory disabilities.[2]  Moreover, the County's Operational Area
19  Emergency Response plan, despite being 455 pages long, makes just one reference
20  to the emergency needs of residents with disabilities.

21        8.     The result of Los Angeles' failure to adequately plan to meet the
22  needs of people with disabilities is that it cannot assure that when a disaster
23  happens, the City and the County will be able to provide emergency services to all
24  residents with disabilities. Los Angeles' inability to provide critical emergency
25  services to people with disabilities means that the lives of this vulnerable
26  population are at extreme and unacceptable risk.

27

28

---

[2] Emergency Operations Master Plan and Procedures §§ 3.1.3 and 4.3.3, available at
http://www.lacity.org/emd/epdp2a3a.htm.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CALIF, et al, v. City and County of Los Angeles,* **Case No.:**
**COMPLAINT**

9.    When natural or man-made disasters occur, men, women, and children with disabilities are among the people most likely to suffer because they cannot access critical information, transportation, or evacuation services.  They are also more likely to use emergency shelters because they are disproportionately low income and do not have other options.

10.    Because of Defendants' failure to structure their emergency preparedness procedures and plans in a way that addresses the needs of people with disabilities, Plaintiffs have been denied equal access to Los Angeles' emergency preparedness program and accompanying services, in violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, California Civil Code § 54, *et seq.*, and California Government Code § 11135.  Plaintiffs seek injunctive and declaratory relief as to these ongoing violations of federal and state civil rights laws.

## PARTIES

11.    Organizational Plaintiff Californians Actively Living Independent and Free ("CALIF") is an independent living center ("ILC") based in downtown Los Angeles: a private, non-profit community-based corporation providing advocacy, resources and individualized assistance to people with disabilities in the Los Angeles area.  CALIF is devoted to the goal of full inclusion, equality, and civil rights for all people with disabilities, especially in the underserved minority communities of Los Angeles.  CALIF's advocacy and direct service work is based on a close association with its constituents.  Many of the founders and leaders of CALIF are themselves seniors and/or people with disabilities.  Accordingly, the interests that CALIF seeks to protect through this litigation are germane to its mission and purpose.

12.    CALIF is directly harmed by Defendants' failure to adequately plan for the needs of people with disabilities in an emergency.  Defendants' discriminatory implementation of their emergency preparedness plans forces

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  CALIF to expend time and resources in advocating for its constituents whose

2  needs are not being met.  CALIF is forced to provide direct assistance to those

3  individuals when government entities are unable to do so.  A favorable decision in

4  this case would directly redress these injuries.

5      13.   Plaintiff Audrey Harthorn is a 51-year-old resident of the City of Los

6  Angeles who is physically disabled by arthrogryposis, a congenital condition

7  causing multiple joint contractures and lack of muscle development.  Audrey uses

8  a power wheelchair for mobility but cannot get into and out of her chair

9  independently due to her lack of muscle coordination.

10     14.   Audrey lives alone on the first floor of a two-story apartment building

11 on the border of Van Nuys and North Hollywood.  Her family lives outside of

12 California and although Audrey has some acquaintances in her building, she does

13 not trust any of them to assist her during an emergency.  Audrey has two

14 caregivers who each visit her once a day to assist with daily living tasks.  Both of

15 these caregivers have families living nearby.  They have told Audrey that their own

16 families would be their first priority in the event of an emergency.

17     15.   If Audrey needed to leave her home in an emergency, she would

18 require wheelchair-accessible transportation and a shelter with accessible

19 bathrooms and accessible paths of travel.

20     16.   Audrey's wheelchair must be charged daily, and without a backup

21 generator, would become inoperable after twenty-four (24) hours without power.

22 This limits Audrey's ability to shelter in place for a prolonged period during a

23 power outage and makes it more likely that she would need to take refuge in an

24 emergency shelter

25     17.   Audrey Harthorn is directly harmed by Los Angeles' failure to

26 adequately plan for the needs of people with disabilities like herself during an

27 emergency.  Audrey lives in fear that if an earthquake or fire was to strike her

28 home, requiring evacuation, she might not be able to leave on her own.  In such a

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  scenario, if neither of her caregivers came to help her and telephones were not
2  working to enable her to call 911, she would have no other means of evacuating
3  because the City and County have not made provisions for identifying residents
4  with disabilities in need of assistance or of offering triage services to help those
5  who cannot evacuate independently.  Audrey's injuries would be redressed by a
6  favorable decision in this case because a meaningful plan to address people with
7  disabilities in Los Angeles's emergency preparation efforts would allay her
8  justifiable fear and anxiety.

9       18.    The Plaintiff class consists of all individuals with disabilities in the
10  City of Los Angeles who have suffered loss of life or physical or emotional harm
11  because of Defendants' failure to plan for the needs of people with disabilities in
12  past emergencies or who are at imminent risk of suffering such harms in the future
13  because of Defendants' continuing failure to address this population's needs in
14  their emergency planning.

15       19.    Defendant City of Los Angeles is placed by California's State
16  Emergency Plan and Standardized Emergency Management System ("SEMS") at
17  the first level of response for meeting the disaster needs of people in its
18  jurisdiction.[3]  It is responsible for the protection of life, property, and the
19  environment during a declared emergency.

20       20.    Defendant County of Los Angeles also provides emergency response
21  services to Los Angeles residents in coordination with the city.  In fact, the
22  County's Operational Area Emergency Response Plan states that the County
23  Emergency Operations Center will be activated whenever the City of Los Angeles
24  opens its own Emergency Operations Center.

25       21.    Plaintiffs are informed and believe and thereon allege that each

26

27  _____

28  [3] SEMS is a system established by California Government Code § 8607 for managing the response to multi-agency and multi-jurisdictional emergencies in California.  It helps unify all elements of California's emergency management apparatus into a single integrated system.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    defendant was the agent and employee of every other defendant and was at all

2    times acting within the scope of such agency.

3        22.    Hereafter, references to Defendants shall be deemed to include all

4    named Defendants, unless otherwise indicated.

## FACTUAL ALLEGATIONS

*The City of Los Angeles Is Exceptionally Vulnerable to Emergencies*

8        23.    The City of Los Angeles is particularly susceptible to the following

9    emergency conditions because of its unique geography and topography:

      a.    Earthquakes on any of the 300 known faults running through
          Southern California, as well as on any of those as yet unknown;

      b.    Urban firestorms;

      c.    Severe weather conditions resulting in flooding, landslides,
          windstorms, extreme heat, drought, and power outages;

      d.    Hazardous material spills or toxic releases caused by
          transportation and/or industrial accidents;

      e.    Tsunami;

      f.    Civil disturbance; and

      g.    Terrorist incidents.

20       24.    Since 1980, the City of Los Angeles has declared at least sixteen (16)

21   local emergencies in response to fires, earthquakes, storm conditions, hazardous

22   material leaks, and civil disturbances.

23       25.    Los Angeles County has declared a state of emergency over twenty-

24   four (24) times since 1980.  In the 1990s, Los Angeles County was among the most

25   disaster-prone areas in the country, with severe floods in 1992, 1993, 1995 and

26   1998, fires in 1993 and 1996, riots in 1992, windstorms in 1997, and the

27   Northridge Earthquake in January 1994.

28       26.    These declared disasters have resulted in billions of dollars in damage,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   267 fatalities and 15,247 injuries.  These figures provide a mere glimpse into the

2   area's disaster-ridden past and the potential for devastation in future disasters.

3

4   *Earthquakes Pose a Particularly Grave Risk to the City of Los Angeles*

5       27.    In 2001, FEMA designated a major earthquake on the San Andreas

6   Fault as third on the short list of most likely catastrophes to strike the United

7   States.  The only two events listed as more likely to occur were a terrorist attack in

8   New York and a major hurricane in New Orleans.  Just over seven years since

9   9/11, and three years since the devastation of Hurricane Katrina, the Southern

10  California Earthquake Center's current estimates suggest an 80-90% chance of a

11  7.0 or greater magnitude earthquake hitting Southern California by the year 2024.

12      28.    Since 1933, Southern California has seen 23 earthquakes of

13  magnitude 5.9 or higher.  The largest earthquake in the region's recorded history

14  was the estimated 7.9 magnitude Fort Tejon earthquake in 1857, in which the fault

15  rupture spread over a 250-mile stretch of the San Andreas Fault traveling from

16  north to south at a speed of 6,000 miles per hour.

17      29.    Earthquakes of this magnitude are estimated to occur along this

18  portion of the San Andreas Fault about every 150 years.  It has now been 151 years

19  since the Fort Tejon earthquake and since that time the City of Los Angeles has

20  grown from a small settlement to the nation's second most populous city, with

21  nearly 4 million people spread over 470 square miles.

22      30.    The Fort Tejon earthquake was the size of approximately 20

23  Northridge earthquakes laid end to end.  In the 6.7 magnitude Northridge

24  earthquake of 1994, shaking lasted for only eight seconds but resulted in fifty-

25  seven (57) deaths and more than 9,000 injuries.  The Northridge quake was also

26  the most costly earthquake in U.S. history, causing an estimated $20 billion in

27  damage.  More than 20,000 people were displaced from their homes, over 1,600

28  buildings were "red-tagged" (declared so unsafe as to be uninhabitable), gas lines

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

ruptured and exploded into fires, and freeway interchanges collapsed.  In addition, 1,042 patients had to be evacuated from the area's hospitals due to structural damage, including at least 100 psychiatric patients.

31.     Southern California faces an imminent threat of a major earthquake. Accordingly, the U.S. Geological Survey, Department of the Interior and State of California, along with 300 contributors published a 2008 report outlining the expected devastation resulting from one of any number of likely earthquake scenarios along the southernmost portions of the San Andreas Fault.  The report makes clear that the San Andreas Fault, as well as others in the region, is capable of producing earthquakes larger than the hypothetical 7.8 magnitude earthquake detailed in the study, and therefore potential damage might exceed what the report outlines.  Despite the study's somewhat conservative approach, the predictions generated by its simulations provide a sobering picture of the scope of potential damage:

a.     A financial loss of $200 billion;

b.     Collapse of three high-rise buildings in downtown Los Angeles;

c.     1,060 fatalities in LA County alone;

d.     Approximately half of the City's hospital buildings left with significant risk of collapse;

e.     5-10 million gallons per hour of untreated sewage flowing into the region's streets and creeks;

f.     More than 121,339 residents of Los Angeles County displaced from their homes;

g.     Loss of drinking water for anywhere from a week to six months;

h.     Loss of electricity for several days;

i.     110,400 cases of new mental health disorders within Los Angeles County;

j.      The ignition of 1,600 fires, 1,200 of which will be too large to be controlled by one fire engine company; and

k.      A "super conflagration" burning hundreds of city blocks in downtown Los Angeles.

*Los Angeles Also Faces the Risk of Devastating Fires*

32.     Los Angeles is also prone to destructive wildfires.  In the four days from October 20-23, 2007 alone, Los Angeles County had 10 major fires in which at least 104,267 acres were burned and 131 structures were destroyed.  In 2003, Southern California saw at least four major wildfires that collectively burned 529,431 acres and destroyed 6,110 structures. In October 2008, the Marek and Sesnon fires raged throughout Los Angeles and Ventura Counties, endangering hundreds of lives and millions of dollars of property and prompting Los Angeles Mayor Antonio Villaraigosa to declare a local state of emergency.

*Emergencies Disproportionately Affect Persons with Disabilities*

33.     When a disaster occurs, people with disabilities and the elderly are more likely to suffer its direct impact.  Many people with disabilities are unable to evacuate themselves, see approaching danger, or hear announcements to evacuate, making them especially vulnerable to natural disasters.

34.     Evacuation announcements are often made using loudspeakers on patrol cars, and television broadcasts often fail to include captions, leaving the deaf and hard of hearing without critical emergency information.  In addition, the lack of accessible transportation makes it extremely difficult for people with disabilities to evacuate and/or travel to emergency shelter.

35.     People with disabilities are disproportionately dependent on electricity because they need to power much of their assistive technology, such as wheelchairs, scooters, and communications software.  In addition, people with certain disabilities are temperature-sensitive and cannot be exposed to extreme

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   temperatures, which may result from power outages.  Thus, utility outages alone

2   may require people with disabilities to seek emergency shelter, if available.

3       36.    Past disasters have shown that low-income families are nearly ten

4   times more likely to seek public shelter in a disaster than more moderate or upper-

5   income families.  People with more resources generally can find alternatives to

6   public shelters, whereas people who have a low income cannot.  In addition, low-

7   income people are more likely to live in multi-family homes, which are more

8   vulnerable to collapse because they are not typically reinforced.  Because people

9   with disabilities are disproportionately low-income, they tend to be

10   overrepresented among shelter residents.

11       37.    In addition, the impact of major disasters on the elderly, a population

12   including large numbers of people with disabilities, has been clearly documented.

13   A recent report published in the Journal of Disaster Medicine and Public Health

14   Preparedness, for example, found that approximately 50% of the people who died

15   as a result of Hurricane Katrina were 75 years old or older, while fewer than 10%

16   were younger than age 45.  The report concludes that targeted emergency and

17   disaster preparedness plans for elderly adults, including those located in nursing

18   homes and other long-term care facilities, are necessary for adequate protection of

19   these vulnerable populations in times of great disaster.

20

21   *The City of Los Angeles is Home to Nearly Half a Million Residents with*

22   *Disabilities*

23       38.    According to the 2006 American Community Survey based on the

24   most recent U.S. Census, as many as 445,639 residents, or approximately 12.5% of

25   the City of Los Angeles' population five years of age or older, have disabilities.

26   The survey also estimates that up to 385,032 residents, or 10% of the city of Los

27   Angeles' population, are 65 years of age or older, and as of the 2000 U.S. Census,

28   25.3% of the City's population over the age of 65 were living below the poverty

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  level.  (A total of 801,050 or 22.11% of the entire City population was living

2  below the poverty level in 2000.)  Also as of the 2000 U.S. Census, 12,853

3  residents of the City of Los Angeles were residents of nursing homes, and

4  unspecified numbers of individuals resided in psychiatric hospitals and emergency

5  homeless shelters.

6      39.    The City's Emergency Management department reports that these

7  statistics are even higher: "Approximately 21% of our City's population has some

8  form of disability."[4]  With a city population of 3,849,378 according to the most

9  recent U.S. Census Data (2006), there are therefore more than 800,000 residents

10  with disabilities in the city of Los Angeles.

11      40.    In addition to the people with disabilities who reside in Los Angeles,

12  there will be untold additional numbers of people with injuries and temporary

13  disabilities who will need access to temporary shelter and support services in an

14  emergency.

15

16  *Experiences of People With Disabilities in Past Disasters, in City of Los Angeles*

17  *and Elsewhere, Have Demonstrated Glaring Deficiencies*

18      41.    It is crucial that both the City and County provide for accessible

19  emergency shelters as part of their emergency planning efforts.  Problems with

20  access to emergency shelters have been glaring deficiencies in previous disasters.

21      42.    After the 1994 Northridge earthquake, trash and glass were scattered

22  everywhere, making it extremely difficult for wheelchair users and the visually

23  impaired to navigate the streets.  Elevators were not functioning and there was very

24  little accessible transportation available, making it nearly impossible for most

25  people with disabilities to get to shelters.

26      43.    Many people with disabilities who were able to get to emergency

27  shelters after the Northridge earthquake were turned away when they arrived.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

[4] *See* http://www.lacity.org/emd/epdpi2e.htm.

*CALIF, et al, v. City and County of Los Angeles,* Case No.:
**COMPLAINT**

Some people were inappropriately referred to medical facilities when shelter personnel misidentified their disabilities as acute medical conditions. A deaf person was denied services by a shelter because no one understood sign language and individuals with cerebral palsy and multiple sclerosis were denied admission to shelters because they were perceived as being under the influence of drugs or alcohol. Other people with disabilities learned when they arrived at shelters that guide dogs and other service animals were not allowed, they could not get to the bathrooms because they were located upstairs, or shower stalls were inaccessible.

44.    During the 2003 wildfires in Southern California, many individuals who require mobility aids to walk were evacuated and brought to emergency shelters without those items. As a result, they were restricted to their beds. Volunteers had to carry them to the restrooms, when needed. Evacuation planning did not include vehicles that could also transport wheelchairs and walkers so evacuees with disabilities could maneuver throughout the shelters without assistance.

45.    Many of the shelters used in the 2003 wildfires were inaccessible to people with mobility disabilities. Those who use service animals were not initially allowed to bring their animals into the shelters. People who are deaf were unable to receive critical information in many of the shelters because there were no interpreters available, they could not understand the public address systems, and television broadcasts did not have captions. People who rely on medication and who did not have their prescriptions or a sufficient supply of their medications with them were placed in danger due to untreated medical conditions. Emergency telephone access was provided through prior arrangements with a vendor that used a trailer that had no telephones located within reach of people using wheelchairs and no telecommunication devices for the deaf.

46.    The problems encountered by people with disabilities after disasters in other parts of the country are also representative of the types of difficulties that

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   people with disabilities experience when their needs are not taken into account in

2   emergency planning, and thus are indicative of the types of problems that Los

3   Angeles residents with disabilities will face in the future if the City and the County

4   continue to neglect this population in their emergency preparedness efforts. For

5   example, after Hurricane Katrina, community-based organizations that serve

6   people with disabilities complained that they were unable to obtain information

7   about where emergency shelters were opening, how to transport people there, or

8   what types of disabilities the shelters could accommodate.  As a result, many

9   people with disabilities were transported to nursing homes where they could not

10  maintain their independence.

11      47.    Many of the shelters used during Hurricane Katrina were not

12  physically accessible to people with disabilities.  Some shelters refused services to

13  people with service animals and obvious disabilities.  Almost all shelters were

14  unable to make their programs accessible to people with disabilities or to meet

15  basic living needs of people with disabilities.  For example, essential medical

16  services were offered on upper floors of shelters with no elevator access.  People

17  who had lost their wheelchairs during evacuation had no way to stand in line for

18  shelter services.  In addition, shelters were not equipped with durable medical

19  equipment, medications for people with mental illness, or insulin for diabetics.

20  Most shelters had no sign-language interpreters and no written announcements,

21  which meant that deaf evacuees were denied access to the information conveyed

22  over loudspeakers.

23      48.    People with disabilities have experienced other problems besides

24  inaccessible shelters during past disasters.  For example, during Hurricane Gustav,

25  no accessible transportation vehicles were provided to the evacuation center in

26  Jefferson Parish, Louisiana.  As a result, people with mobility disabilities were

27  carried onto buses that could not accommodate their wheelchairs and where they

28  could not be strapped in place to maintain their position, placing them at extremely

1  high risk of injury.

2      49.    During the 2007 wildfires in San Diego, emergency alert phone calls

3  did not reach any households that use TTY machines, a common

4  telecommunications device used by deaf and hard-of-hearing people, even though

5  that city had required deaf residents using TTYs to register their devices ahead of

6  time so that customized text messages could be sent to them.  Because of this

7  failure to provide accessible communication, deaf and hard of hearing residents of

8  San Diego were deprived of critical information about evacuation and emergency

9  shelter.

10     50.    Despite these well documented examples, both within Los Angeles

11 and around the country, of the problems faced by people with disabilities during

12 major disasters, the needs of people with disabilities in Los Angeles continue to be

13 unmet in disaster planning.

14

15     *The Elements of a Comprehensive Emergency Preparedness Plan for People*

16 *with Disabilities: the Features that the City and County Must Address*

17     51.    The disability community has been reporting problems with

18 emergency services for decades.  In order to prevent the above-described

19 experiences of people with disabilities during disasters, emergency planning must

20 take into account the unique needs of people with disabilities.

21     52.    The features that the City and the County should address in their

22 Emergency Preparedness plan include but are not limited to: information specific

23 to emergency shelters; electricity and backup power; transportation; emergency

24 personnel training; emergency notification systems; contracts with community-

25 based organizations; evacuation plans and public awareness of these evacuation

26 plans; nursing home evacuation oversight; and post-disaster rehabilitation plans.

27 As a whole, these crucial components are Los Angeles' Emergency Preparedness

28 programs and services.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

53.    In order to comply with federal and state civil rights laws, Los Angeles must ensure that people with disabilities have full and equal access to all aspects of these emergency preparedness programs and services and that people with disabilities are not prevented by virtue of their disability from participating in and obtaining the benefits of such programs and services.  In practice, this means that the City's and the County's emergency preparedness plans must provide for making every aspect of emergency preparedness programs and services accessible to and usable by residents with disabilities: that is, ensuring that emergency transportation includes accessible transportation, that emergency notification includes accessible emergency notification, and that emergency shelter includes accessible emergency shelter.

*Los Angeles Has Not Adequately Planned to Meet the Emergency Needs of People with Disabilities*

54.    The City and the County have not learned the lessons of past disasters in developing their current emergency preparedness policies and procedures.  In all aspects of their emergency preparedness programs and services, the City and the County are failing to provide equal access to people with all kinds of disabilities.

55.    At the core level, the Mission Statement of the Emergency Management Department of the City of Los Angeles states that it "will lead the City of Los Angeles in comprehensive emergency management including: planning and preparedness for, response and recovery from, and mitigation of natural, manmade, and accidental incidents of high consequence."  Despite this goal, the efforts of the City and County in emergency preparedness have utterly failed to include the needs of people with disabilities in these crucial and potentially life-saving activities.

56.    The City and the County's current Emergency Plans do not take into account the needs of persons with disabilities, nor do they ensure that emergency

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  preparedness programs and services will be accessible to and usable by persons

2  with disabilities.  While the plans provide detailed instructions for various

3  elements of emergency response before, during, and after a disaster, they do not

4  discuss what steps to take to ensure that people with disabilities will be equally as

5  safe as the rest of the population.

6      57.    Some of the deficiencies in the City's and the County's emergency

7  plans include, but are not limited to: no provisions for making emergency

8  notifications accessible to people with sensory and cognitive disabilities; no

9  comprehensive mechanism for identifying people with mobility impairments who

10  may need assistance in evacuating their homes; no plan for ensuring that sufficient

11  accessible vehicles will be on hand to transport people with disabilities in an

12  evacuation; and no discussion of what emergency shelters must contain in order to

13  accommodate people with disabilities, nor a survey of which city- and county-run

14  shelters meet these accessibility standards.

15      58.    In addition, the Transition Plan created by the City of Los Angeles as

16  required by the Americans with Disabilities Act[5] does not specifically contain a

17  section pertaining to emergency preparedness for the City.  This Plan is supposed

18  to ensure that the City makes every one of its services accessible – including its

19  service of emergency response.  Even at the most basic level, the City neglects to

20  include emergency preparedness when documenting its plans for making the City

21  more accessible.

22      59.    The County last revised its Emergency Public Information Plan in

23  August 2002, and the Los Angeles County Operational Area Emergency Response

24

25  [5] ADA's implementing regulations require that public entities create a transition plan to bring its facilities into
compliance with the Act.  28 C.F.R. 35.150(d).  The County of Los Angeles last revised its Emergency Public

26  Information Plan in August 2002, and the Los Angeles County Operational Area Emergency Response Plan was last
approved in 1998.  The Emergency Public Information Plan is entirely silent on what the county will do to address

27  the needs of residents with disabilities, and the Operational Area Emergency Response Plan contains a single
reference to residents with "special needs" in its 455 pages (at page R-24).  Several components of emergency

28  preparedness include facilities – such as shelters, transportation vehicles, and means of communication, and hence
fall under the transition plan requirement.

Plan was last approved in 1998.  The Emergency Public Information Plan is entirely silent on what the County will do to address the needs of residents with disabilities, and the Operational Area Emergency Response Plan contains a single reference to residents with disabilities in its 455 pages.

60.     While the City and the County have plans regarding communication, transportation, shelter, and medical response, none of those plans account for people with disabilities.  Such plans cannot be one size fits all.  A person in a wheelchair requires vehicles for emergency transportation that can accommodate a wheelchair and are equipped with safety restraints, and such accessible transportation vehicles are not discussed in any of the City's or the County's emergency plans.  A person who is deaf would miss out on information conveyed by the auditory emergency communication system that the City has in place.  A person with vision impairment cannot rely on verbal instructions to evacuate if there is debris in his way.  More shelters are inaccessible than accessible, forcing people with disabilities to be segregated from their local communities and to travel far to an accessible place to stay.  There are no plans to keep families together, often resulting in a person with a disability being separated from his or her loved ones.  This inaccessible one-size-fits-all system for elements such as transportation, shelter, and communication effectively puts people with disabilities at a much greater disadvantage compared to people without disabilities during and after an emergency.

63.     In the City's recent "After Action Reports," or reports regarding particular emergency responses, there was very little or no information regarding the City's response specifically towards people with disabilities.

64.     Furthermore, the City's recent city-wide earthquake drill, "The Great Shake-Out," failed to include people with disabilities.  For example, although the City put a lot of planning into this event, it did not ensure that people with hearing loss would be able to understand verbal instructions that were given in its public

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  transportation vehicles. This reflects the lack of consideration the City has given to

2  the accessibility of its emergency preparedness programs and services.

3      65.    By and through its neglect of people with disabilities, Defendants

4  have violated state and federal nondiscrimination requirements.  Such actions

5  violate, *inter alia*, Title II of the Americans with Disabilities Act's requirement

6  that Defendants ensure that people with disabilities receive equal benefits and

7  equal access to the services offered by the City and the County.  Upon information

8  and belief, Plaintiffs allege that these discriminatory practices continue through the

9  present.

10     66.    Accordingly, Plaintiffs bring this action seeking injunctive and

11  declaratory relief in order to compel Defendants to provide equal access to people

12  with disabilities in its emergency preparedness programs and services.

### CLASS ALLEGATIONS

15     67.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the

16  named Plaintiffs bring this action for injunctive and declaratory relief on their own

17  behalf and on behalf of all persons similarly situated.  The class that the named

18  Plaintiffs seek to represent is composed of all individuals with disabilities in the

19  City of Los Angeles who have suffered loss of life, physical harm, or emotional

20  harm because of Defendants' failure to plan for the needs of people with

21  disabilities in past emergencies or who are at imminent risk of suffering such

22  harms in the future because of Defendants' continuing failure to address this

23  population's needs in their emergency planning.  The class claims herein are

24  asserted solely for injunctive and declaratory relief for the class.

25     68.    The persons in the class are so numerous that joinder of all such

26  persons is impractical and the disposition of their claims in a class action is a

27  benefit to the parties and to the Court.

28

69.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that they, or their constituents, have been and continue to be denied their civil rights of access to, and use and enjoyment of, Los Angeles' Emergency Preparedness programs and services due to Defendants' discriminatory implementation of such programs and services, resulting not only in a denial of meaningful access to those programs and services for people with disabilities but also an extreme and unacceptable risk of death or serious injury to such individuals.

70.    Common questions of law and fact predominate, including questions raised by Plaintiffs' allegations that Defendants have failed to account for people with disabilities in their emergency planning and that, as a result, key components of Defendants' Emergency Preparedness programs and services exclude and discriminate against people with disabilities.

71.    The claims of the named Plaintiffs are typical of the claims of the class as a whole because the named Plaintiffs, or their constituents, are similarly affected by Defendants' failure to provide access to Emergency Preparedness programs and services.

72.    The named Plaintiffs are adequate class representatives because they, or the constituents they serve, are directly affected by Defendants' discriminatory implementation of their emergency preparedness and response policies, which denies class members meaningful access to Defendants' Emergency Preparedness programs and services.  The interests of the named Plaintiffs are not antagonistic to, or in conflict with, the interests of the class as a whole.  The attorneys representing the class are experienced in disability law and in class action institutional reform litigation.  Plaintiffs' counsel is qualified to fully prosecute this litigation and possess adequate resources to see this matter through to a resolution.

\\

\\

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

73.   Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

74.   Plaintiffs contemplate the eventual issuance of notice to the proposed class members that would set forth the subject and nature of the instant action. Defendants' records may be used for assistance in the preparation of such notices. To the extent that any further notices may be required, Plaintiffs contemplate the use of additional media and/or mailings.

# FIRST CAUSE OF ACTION
## Violation of Title II of the Americans with Disabilities Act
### (42 U.S.C. § 12131 et seq.)

75.   Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through 73, inclusive.

76.   Title II of the Americans with Disabilities Act ("ADA") prohibits a public entity from excluding a person with a disability from participating in, or denying the benefits of, the goods, services, programs and activities of the entity or otherwise discriminating against a person on the basis of disability.  42 U.S.C. § 12132.

77.   The implementing regulations of Title II of the ADA require that, in providing any aid, benefit or service, a public entity may not deny a qualified individual with a disability the opportunity to benefit from any such aid, benefit or service.  28 C.F.R. § 35.130(b)(1)(i).

78.   The Title II implementing regulations also state that "a public entity may not, in determining the site or location of a facility, make selections (i) that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  objectives of the service, program or activity with respect to individuals with

2  disabilities." 28 C.F.R. § 35.130(b)(4)(i)-(ii).

3      79.   The Title II implementing regulations further provide that an

4  individual with a disability shall not be excluded from participation in, or be

5  denied the benefits of the services, programs, or activities of a public entity

6  because a public entity's facilities are inaccessible to or unusable by individuals

7  with disabilities.  28 C.F.R. §35.149.

8      80.   Plaintiff Audrey Harthorn is a qualified individual with a disability

9  within the meaning of the ADA.

10     81.   By failing to plan to meet the Emergency Preparedness needs of

11  people with disabilities, Defendants have excluded them from participation in,

12  denied them the benefits of, and discriminated against them in their Emergency

13  Preparedness programs and services.

14     82.   Defendants, both of which are public entities within the meaning of

15  the ADA, have failed to develop policies, practices and/or procedures that address

16  the Emergency Preparedness needs of individuals with disabilities, and, as such,

17  Defendants deny individuals with disabilities the opportunity to benefit from their

18  Emergency Preparedness programs and services.

19     83.   Defendants' conduct constitutes ongoing and continuous violations of

20  the ADA, and unless restrained from doing so, Defendants will continue to violate

21  the ADA.  This conduct, unless enjoined, will continue to inflict injuries for which

22  Plaintiffs have no adequate remedy at law.  Consequently, Plaintiffs are entitled to

23  injunctive relief pursuant to section 308 of the ADA (42 U.S.C. § 12188), as well

24  as reasonable attorneys' fees and costs.

25         WHEREFORE, Plaintiffs pray for relief as set forth below.

26  \\

27  \\

28  \\

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CALIF, et al, v. City and County of Los Angeles,* Case No.:
**COMPLAINT**

21

**SECOND CAUSE OF ACTION**

**Violation of Section 504 of the Rehabilitation Act of 1973**

**(29 U.S.C. § 794)**

84.   Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through 82, inclusive.

85.   Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations, prohibit discrimination against people with disabilities by recipients of federal funding.  Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . .
> shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits
> of, or be subjected to discrimination under any program
> or activity receiving Federal financial assistance . . . .

86.   Plaintiff Audrey Harthorn is a qualified individual with a disability within the meaning of Section 504.

87.   Defendants receive federal financial assistance to provide Emergency Preparedness services during an emergency.

88.   By failing to plan to meet the Emergency Preparedness needs of people with disabilities, Defendants have excluded them from participation in, denied them the benefits of, and discriminated against them in programs and activities that receive federal financial assistance, solely by reason of their disabilities, in violation of 29 U.S.C. § 794 and the implementing regulations.

89.   As a proximate result of Defendants' violations of Section 504 of the Rehabilitation Act, Plaintiffs have been injured as set forth herein.

90.   Plaintiffs have no adequate remedy at law and unless the relief requested herein is granted, Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied access to Defendants' Emergency Preparedness programs and services.  Consequently, Plaintiffs are entitled to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  injunctive relief, as well as reasonable attorneys' fees and costs.

2      WHEREFORE, Plaintiffs pray for relief as set forth below.

3

4                    **THIRD CAUSE OF ACTION**

5          **Violation of California Civil Code § 54, *et seq.***

6      91.    Plaintiffs incorporate, by reference herein, the allegations in

7  paragraphs 1 through 89, inclusive.

8      92.    The emergency shelter facilities under the control of Defendants as

9  part of their Emergency Preparedness programs and services constitute places of

10  public accommodation and/or places to which the general public is invited within

11  the meaning of California Civil Code §§ 54.1 and 54.3.

12      93.    Defendants have violated and are violating Plaintiffs' rights under

13  California Civil Code § 54, *et seq.*, by denying Plaintiffs full and equal access to

14  and use and enjoyment of the Emergency Preparedness programs and services due

15  to the acts and omissions alleged herein.

16      94.    Defendants' discriminatory conduct alleged herein includes, *inter*

17  *alia*, the violation of the rights of persons with disabilities set forth in Title II of the

18  ADA and accompanying regulations, all of which have been expressly

19  incorporated into California Civil Code § 54, *et seq.*, since January 1, 1993.

20      95.    Defendants' actions constitute a violation of Plaintiffs' rights under

21  California Civil Code § 54, *et seq.*, and therefore Plaintiffs are entitled to

22  injunctive relief remedying the discrimination.

23      96.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

24      WHEREFORE, Plaintiffs pray for relief as set forth below.

25                    **FOURTH CAUSE OF ACTION**

26        **Violation of California Government Code § 11135, *et seq.***

27      97.    Plaintiffs incorporate, by reference herein, the allegations in

28  paragraphs 1 through 95, inclusive.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CALIF, et al, v. City and County of Los Angeles,* Case No.:
COMPLAINT

23

98.   California Government Code § 11135 and the regulations promulgated thereunder prohibit discrimination against people with disabilities by any program or activity funded by the State.  Section 11135 provides, in pertinent part, that:

> No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the State.

99.   Defendants receive financial assistance from the State of California to provide Emergency Preparedness services during an emergency.

100.   Through their actions and inactions, by refusing to provide Plaintiffs full and equal access to their Emergency Preparedness services, Defendants have denied Plaintiffs the benefits of, or unlawfully subjected them to discrimination in, such programs and activities solely because of their disabilities in violation of Government Code § 11135 and the regulations promulgated thereunder.

101.   As a proximate result of Defendants' violations of § 11135, Plaintiffs have been injured as set forth herein.

102.   Plaintiffs have no adequate remedy at law.  Unless the relief requested herein is granted, Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied full access to Defendants' facilities, programs, services, and activities on the basis of disability.  Consequently, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Declaratory Relief

103.   Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through 101, inclusive.

104.   Defendants deny failing to comply with applicable laws prohibiting discrimination against persons with disabilities, specifically, the Americans with

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Disabilities, Act, Section 504 of the Rehabilitation Act, California Civil Code § 54,

2   *et seq.*, and California Government Code § 11135.

3       105.   A judicial declaration is necessary and appropriate at this time in

4   order that each of the parties may know their respective rights and duties and act

5   accordingly.

6   WHEREFORE, Plaintiffs pray for relief as set forth below.

7

8                      **REQUEST FOR RELIEF**

9   WHEREFORE, Plaintiffs pray for relief as follows:

10      106.   A declaration that Defendants' failure to adequately plan to meet the

11  Emergency Preparedness needs of people with disabilities violates the Americans

12  with Disabilities Act, Section 504 of the Rehabilitation Act, California Civil Code

13  § 54, *et seq.*, and California Government Code § 11135.

14      107.   An order and judgment enjoining Defendants from violating the

15  Americans with Disabilities Act, Section 504 of the Rehabilitation Act, California

16  Civil Code § 54, *et seq.*, and California Government Code § 11135, and requiring

17  Defendants to develop and implement a Emergency Preparedness plan that

18  addresses the emergency needs of people with disabilities.

19      108.   Plaintiffs' reasonable attorneys' fees and costs.

20      109.   Such other and further relief as the Court deems just and proper.

21  \\

22  RESPECTFULLY SUBMITTED,

23  DATED: Jan 14, 2009          DISABILITY RIGHTS ADVOCATES
                                 DISABILITY RIGHTS LEGAL CENTER
24

25

26

27                           By:   _____

28                                 Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV09- 287 CBM (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Sidney Wolinsky (CA Bar No. 33716)
swolinsky@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Tel: 510-665-8644   (See attached for additional attys)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE,  (See attached sheet)<br>PLAINTIFF(S)<br><br>v.<br><br>CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-0287** CBM (RZx)<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):  <u>See attached sheet for all defendants</u>

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  <u>Sidney Wolinsky</u> _____, whose address is <u>Disability Rights Advocates, 2001 Center St., Fourth Fl., Berkeley, CA 94704</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JAN 1 4 2009__

By: _____
        Deputy Clerk

        (Seal of the Court)

        1192

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                SUMMONS

# ATTACHMENT TO SUMMONS

ATTORNEY INFORMATION:

Paula D. Pearlman (CA Bar No. 109038)
paula.pearlman@lls.edu
Shawna L. Parks (CA Bar No. 208301)
shawna.parks@lls.edu
Debra Patkin (CA Bar No. 252197)
debra.patkin@lls.edu
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, California 90015
Tel:  (213) 736-1031; Fax:  (213) 736-1428

ADDITIONAL PLAINTIFFS

a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED,


TO:  DEFENDANTS

CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED | CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Sidney Wolinsky<br>Disability Rights Advocates, 2001 Center Street, Fourth Floor, Berkeley, CA 94704  Tel: 510-665-8644     (See attached for additional attorney information) | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973; CA Civil Code § 54, et seq.; CA Govt Code § 11135, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☒ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |

# CV09-0287

**FOR OFFICE USE ONLY:**     Case Number:_____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s):

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note:  In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):                           Date   1/14/09

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# ATTACHMENT TO CIVIL COVER SHEET

ATTORNEY INFORMATION:

Paula D. Pearlman (CA Bar No. 109038)
paula.pearlman@lls.edu
Shawna L. Parks (CA Bar No. 208301)
shawna.parks@lls.edu
Debra Patkin (CA Bar No. 252197)
debra.patkin@lls.edu
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, California 90015
Tel:  (213) 736-1031; Fax:  (213) 736-1428