DISABILITY RIGHTS ADVOCATES
SID WOLINSKY (SBN 33716)
2001 Center Street, Fourth Floor
Berkeley, CA 94704
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716
Email:        general@dralegal.org

DISABILITY RIGHTS LEGAL CENTER
PAULA PEARLMAN (SBN 109038)
Paula.pearlman@lls.edu
SHAWNA L. PARKS (SBN 208301)
Shawna.parks@lls.edu
919 Albany Street
Los Angeles, CA 90015
Telephone:    (213) 736-1031
Facsimile:    (213) 736-1428
TTY:          (213) 736-8310
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity, <br><br> Defendants. | **Case No.: CV 09-0287 CBM (RZx)** <br><br> Honorable Consuelo B. Marshall <br><br> NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> **Date: April 12, 2010** <br> **Time:        10:00 AM** <br> **Court:        2** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 12, 2010, at 10:00 a.m., or at such other date and time as may be ordered by the Court, in Courtroom 2 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California 90012 Plaintiffs will and hereby do move this Court for an order certifying the following class for injunctive and declaratory relief under Federal Rule of Civil Procedure 23(b)(2): all  people with disabilities, as defined by the Americans with Disabilities Act, who are within the City of Los Angeles and the jurisdiction served by the City of Los Angeles' and County of Los Angeles' emergency preparedness programs and services.

As set forth more fully herein, Plaintiffs easily satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure. This class is also appropriate for certification under Rule 23(b)(2) because Defendants have acted or refused to act with regard to the class as a whole.

This motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; and the declarations of Lilibeth Navarro, Audrey Harthorn, Teresa Favuzzi, Sidney Wolinsky, Shawna Parks, Karla Gilbride, Robert Clark, Sergio Garibay, Greater Los Angeles Agency on Deafness ("GLAD"), Ray Henderson, Richard Hernandez, George Layton, John Lonberg, Christopher Luna, Allen McCorkendale, Shannon Murray, Beverly Overton, Patricia Parker, Alicia Pedroza, Ben Rockwell, Federico Williams, Leonard Woods, and Caesar Zamora, and all supporting exhibits; all pleadings and papers on file in this action; and any argument or evidence that may be presented at the hearing in this matter, if a hearing is deemed necessary.  This motion is further supported by the Stipulation and Proposed Order jointly entered into by all parties in this action, which propose the same class definition set forth above.  Because Defendants have stipulated to

certification of a class in this matter, Plaintiffs believe that this motion is appropriate for decision without oral argument.

In accordance with Local Rule 7-3, Plaintiffs' counsel met and conferred with Defendants' counsel regarding this motion on an ongoing basis beginning in January of 2010. These discussions culminated in Defendants' counsel agreeing to stipulate to class certification. The proposed class definition set forth above and repeated in the accompanying Memorandum of Points and Authorities was also agreed upon by all parties to this action. The Stipulation and Proposed Order accompanying this motion set out the scope of issues on which the parties agree with respect to certification of this class, while also making clear that Defendants deny the contentions made in Plaintiffs' Memorandum of Points and Authorities and in the declarations supporting this motion.

Although Defendants have stipulated to certification of a class for injunctive and declaratory relief under Federal Rule of Civil Procedure 23(b)(2), Plaintiffs nonetheless offer the accompanying Memorandum of Points and Authorities and supporting declarations to provide the Court with a sufficient basis for determining that the requirements of Rule 23 are met. *See* A. Conte and H. Newberg, Class Actions § 7:10 (4th Ed. 2002) ("The plaintiffs should not assume . . . that the defendant's failure to object to the class certification motion is an automatic guarantee that a class will be certified by the court based only on the pleadings. The plaintiffs must still move for certification and demonstrate Rule 23 satisfaction.").

DATED: March 15, 2010                  Respectfully submitted,

                                       DISABILITY RIGHTS ADVOCATES
                                       DISABILITY RIGHTS LEGAL CENTER


                                       _____
                                       Karla Gilbride
                                       Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
SIDNEY WOLINSKY (CA Bar No. 33716)
swolinsky@dralegal.org
KARLA GILBRIDE (CA BAR NO. 264118)
kgilbride@dralegal.org
2001 Center St., Third Floor
Berkeley, CA 94704
Telephone:     (510) 665-8644
Facsimile:     (510) 665-8511
TTY:           (510) 665-8716

DISABILITY RIGHTS LEGAL CENTER
PAULA PEARLMAN (CA Bar No. 109038)
Paula.pearlman@lls.edu
SHAWNA L. PARKS (CA Bar No. 208301)
Shawna.parks@lls.edu
919 Albany Street
Los Angeles, CA 90015
Telephone:     (213) 736-1031
Facsimile:     (213) 736-1428
TTY:           (213) 736-8310

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves, and ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity. <br><br> Defendants. | Case No. CV09-8287CBM (RZx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

    A.   Defendants Have Developed Centralized Plans for Meeting the Needs of People in the City of Los Angeles During a Major Emergency or Disaster ................................................................. 2

    B.   The Proposed Class Is Comprised of Nearly a Million People with Disabilities in the City of Los Angeles Who Plaintiffs Contend Are Not Being Served by Defendants' Current Emergency Planning. 4

    C.   Proposed Class Representatives. ............................................... 8

        1.   Communities Actively Living Independent and Free ("CALIF") ................................................................. 8

        2.   Audrey Harthorn .......................................................... 9

III.  LEGAL ARGUMENT .................................................................................... 9

    A.   The Proposed Class. .................................................................. 9

    B.   The Rule 23 Standards. ............................................................ 10

    C.   The Class Meets All the Requirements of Rule 23(a).      12

        1.   The Class Is So Numerous that Joinder Is Impracticable ......... 12

        2.   There Are Numerous Questions of Law and Fact Common to the Class ................................................. 14

        3.   The Named Plaintiffs' Claims Are Typical of the Class .......... 17

        4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. .............................. 20

    D.   The Conditions of Rule 23(b)(2) are Met. ............................... 21

IV.   CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................ 10, 22

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ...................................................... 10, 14, 15

*Arnold v. United Artists Theatre Circuit, Inc.,*
158 F.R.D. 439 (N.D. Cal. 1994) ...................................................passim

*Baby Neal for and by Kanter v. Casey,*
43 F.3d 48 (3rd Cir. 1994) .......................................................... 14, 18, 21

*Bates v. United Parcel Service,*
204 F.R.D. 440 (N.D. Cal. 2001) ............................................................ 12

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) .................................................................. 11

*Brink v. First Credit Res.,*
185 F.R.D. 567 (D. Ariz. 1999)............................................................... 20

*Brown v. Brewer,*
2009 U.S. Dist. LEXIS 47535 (C.D. Cal. May 29, 2009)........................ 11

*Burdick v. Union Sec. Ins. Co.,*
2008 U.S. Dist. LEXIS 108616) C.D. Cal. Mar. 25, 2008) ........................ 13, 18, 21

*Californians for Disability Rights, Inc. v. California*
*Dep't of Transportation,*
249 F.R.D. 334 (N.D. Cal. 2008) ........................................................... 12

*Cervantez v. Celestica Corp.,*
253 F.R.D. 562 (C.D. Cal. 2008)...................................................... 12, 13

*Comer v. Cisneros,*
37 F.3d. 775 (2d Cir. 1994) ................................................................... 22

*Doe v. Los Angeles Unified Sch. Dist.,*
48 F.Supp.2d 1233 (C.D. Cal. 1999) ........................................................................ 12

*Dukes v. Wal-Mart Stores Inc.,*
222 F.R.D. 137 (N.D. Cal. 2004) ...................................................................... 18, 20

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)................................................................................................ 11

*Elliot v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977),
*aff'd in relevant part, rev'd in part*, 442 U.S. 682 (1979)........................................ 23

*Gen'l Telephone Company of the Southwest v. Falcon,*
457 U.S. 147 (1982)............................................................................ 11, 17, 18

*Haley v. Medtronic, Inc.*
169 F.R.D. 643 (C.D. Cal. 1996)............................................................................. 12

*Hanon v. Dataprods. Corp.,*
976 F.2d 497 (9th Cir. 1992) .................................................................................. 11

*Hodgers-Durgin v. Vina,*
165 F.3d 667 (9th Cir. 1999) .................................................................................. 18

*Holmes v. Continental Can Co.,*
706 F.2d 1144 (11th Cir. 1983) .............................................................................. 22

*Immigrant Assistance Project of Los Angeles County*
*Fed'n of Labor (AFL-CIO) v. I.N.S.,*
306 F.3d 842 (9th Cir. 2002) .................................................................................. 14

*In re Beer Distrib. Antitrust Litig.,*
188 F.R.D. 557 (N.D. Cal. 1999) ............................................................................ 13

*In re Heritage Bond Litig.,*
2004 WL 1638201 (C.D. Cal. July 12, 2004) ......................................................... 18

*Int'l Molders' and Allied Workers Local Union No. 164 v. Nelson,*
102 F.R.D. 457 (N.D. Cal. 1983) ....................................................... 13, 14, 19, 20

*Jordan v. Los Angeles County*, 669 F.2d 1311 (9th Cir. 1982),
*vacated on other grounds*, 459 U.S. 810 (1982) ................................................. 11, 13

*Kincaid v. City of Fresno*,
244 F.R.D. 597 (E.D. Cal. 2007) ........................................................................ 16

*Maddock v. KB Homes*, Inc.,
248 F.R.D. 229 (C.D. Cal. 2007) ........................................................................ 14

*Mazza v. Am. Honda Motor Co.*,
254 F.R.D. 610 (C.D. Cal. 2008) ........................................................................ 11

*Moeller v. Taco Bell Corp.*,
220 F.R.D. 604 (N.D. Cal. 2004) ..................................................................... 13, 19

*Moore v. Hughes Helicopters, Inc.*
708 F.2d 475 (9th Cir. 1983) .............................................................................. 11

*Navarro-Ayala v. Hernandez-Colon*,
951 F.2d 1325 (1st Cir. 1991) ............................................................................ 23

*Orantes-Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982) ...................................................................... 12

*Pottinger v. Miami*,
720 F. Supp. 955 (S.D. Fla. 1989) ...................................................................... 15

*Riker v. Gibbons*,
2009 U.S. Dist. LEXIS 35449 (D. Nev. Mar. 31, 2009) ......................................... 15

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) .............................................................................. 15

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ............................................................................ 15

*Siddiqi v. Regents of the Univ. of Cal.*,
2000 U.S. Dist. LEXIS 19930 (N.D. Cal. Sept. 6, 2000) ......................................... 11

*Slaven v. BP America, Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................ 14

*Staton v. Boeing Co.*, 3
27 F.3d 938 (9th Cir. 2003) ................................................................ 18

*Stolz v. United Brotherhood of Carpenters*,
620 F. Supp. 396 (D. Nev. 1985) ........................................................ 23

*Sung Park v. Ralph's Grocery Co.*,
254 F.R.D. 112 (C.D. Cal. 2008) .................................................. 13, 21

*True v. Am. Honda Motor Co., Inc.*,
2009 U.S. Dist. LEXIS 29814 (C.D. Cal. Mar. 25, 2009) ...................... 12

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
*Workers Int'l Union v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) ............................................................... 11

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ............................................................... 10

*Von Colln v. County of Ventura*,
189 F.R.D. 583, 591 (C.D. Cal. 1999) ............................................ 17, 21

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ........................................................ 21, 22

## Other Authorities

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
§3.3 (4th ed. 2006) ............................................................................. 12

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
§3.5 (4th ed. 2006) ............................................................................. 13

1966 Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966) ............. …..22

3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
§7:24, 78 …………………………………………………………..……..20

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
§4.11 (3rd ed., 1992) ........................................................................... 22

5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§ 24.25, 24-105 (3d ed. 1992) ...................................................................... 18

5 James William Moore et al,, *Moore's Federal Practice*
§23.22(3)(a) (3d ed. 2003)............................................................................ 13

Wright, Miller & Kane, *Federal Practice & Procedure Civil*
§ 1775, p. 470 (2d ed. 1986)......................................................................... 22

**Rules**

Federal Rules of Civil Procedure, Rule 23(a) ........................................... 10

Federal Rules of Civil Procedure, Rule 23(a)(1)...................................... 12

Federal Rules of Civil Procedure, Rule 23(a)(2)...................................... 14

Federal Rules of Civil Procedure, Rule 23(b) ........................................... 10

Federal Rules of Civil Procedure, Rule 23(b)(2)................................. 10, 21

Federal Rules of Civil Procedure, Rule 23(d) ........................................... 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case addresses what Plaintiffs contend is the systemic failure of the City and County to include the needs of people with disabilities in their emergency preparedness plans. This systemic failure is precisely the sort of discrimination that Rule 23(b)(2) class actions were designed to address.

Indeed, this case presents a prototypical class action alleging civil rights violations affecting a large group of people.  More than 800,000 people with disabilities are estimated to live in the City of Los Angeles, with many thousands more working in or traveling to the City on a daily basis. This group of people is subject to a common and centralized system of emergency planning that Plaintiffs' contend wholly fails to meet the needs of people with disabilities. Thus, this case presents common questions of law and fact, with the basic question amounting to whether Defendants' alleged failure to address the needs of people with disabilities in their centralized emergency preparedness plans is a violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, California Civil Code § 54, *et seq.*, and California Government Code § 11135.

Plaintiffs contend that the problems with the City's and County's emergency preparedness programs are clear. Despite acknowledging that notification, evacuation and transportation are all essential components of an emergency plan which people with disabilities might need special accommodations to access, the City admits that it has no plan to notify people with disabilities of an impending disaster or to transport people with disabilities to emergency shelters. The County's Operational Area Emergency Response plan, despite being 455 pages long, makes just one reference to the emergency needs of residents with disabilities. Despite the fact that the County Department of Public Social Services is responsible under its own disaster plan for operating medically

fragile shelters, it has never done so, nor does the County know whether general population shelters have accessible cots or backup generators for running medical equipment when they first open.  These problems, joined by a host of others, combine to create a common barrier to addressing the needs of people with disabilities in the event of a major emergency.

The harm that arises from this alleged lack of planning is neither speculative nor remote.  Plaintiffs maintain that the current lack of any centralized emergency preparedness plans for residents with disabilities not only may put residents with disabilities at a higher risk than the general population, were an emergency to occur, but also causes immediate fear, apprehension and unease amongst residents with disabilities who have a right to be included in the centralized emergency preparedness plans that have been created by the City and County.

As a result of the lack of any centralized emergency preparedness plans for people with disabilities, hundreds of thousands of people with disabilities in the City of Los Angeles have been systematically denied equal access to the City and County of Los Angeles' emergency preparedness programs and services, in violation of federal and state nondiscrimination statutes.  Determining the City and County's liability and the proper relief will involve questions of both fact and law that are common to the proposed class.

Certification as a class action is the most efficient way to address these systemic issues, and to avoid multiple lawsuits that would raise similar questions and involve similar facts and legal claims. Accordingly, the Court should certify the proposed class under Federal Rule of Civil Procedure 23(b)(2).

## II.   STATEMENT OF FACTS

**A.      Defendants Have Developed Centralized Plans for Meeting the Needs of People in the City of Los Angeles During a Major Emergency or Disaster**

Both the City and County have publicly recognized that the City of Los Angeles is uniquely vulnerable to many types of disasters. *See, e.g.,* Mayor Antonio R. Villaraigosa, Emergency Management Initiative, City of Los Angeles, p. 3 ("Los Angeles faces more natural and man-made threats than most regions of the country."), attached as Exhibit A to Declaration of Karla Gilbride in Support of Motion for Class Certification ("Gilbride Decl."); Los Angeles County Operational Area Emergency Response Plan, at 1-31 ("The County of Los Angeles is located in one of the most disaster-prone areas of the United States and is subject to exceptional earthquake hazard. The County has also experienced other types of major emergencies such as wildland fires, floods and civil unrest. . . ."), Exhibit B to Gilbride Decl.

The City and County have responded to this elevated risk of emergencies in the Los Angeles area by developing multiple centralized plans to address the needs of Los Angeles residents during such crises. *See, e.g.*, City of Los Angeles Emergency Operations Organization – Emergency Operations Master Plan and Procedures Manual ("City Emergency Operations Master Plan"), Exhibit C to Gilbride Decl.; Los Angeles County Operational Area Emergency Response Plan at 1-3, Exhibit B to Gilbride Decl. These plans authorize various City and County agencies and officials to manage emergency services under a centralized structure. *See* City Emergency Operations Master Plan, p. 2-4 (establishing Emergency Operations Organization and Emergency Operations Board for managing emergencies at the City level); Deposition of Jeanne O'Donnell ("O'Donnell depo"), at 21:11-24:13 (describing size and staffing of Los Angeles County Office of Emergency Management), Exhibit D to Gilbride Decl.

The City's and County's existing emergency plans are intended to be comprehensive and to anticipate the needs of all Los Angeles residents. *See* Deposition of James Featherstone ("Featherstone depo") at 34:20-37:8 (describing the Emergency Master Plan and various incident-specific annexes to that plan as

1  "comprehensive" and comprising the entirety of "the City's overall plan for

2  dealing with an emergency or disaster"), Exhibit E to Gilbride Decl.; O'Donnell

3  depo, at 25:19 - 26:10 (describing the Operational Area Emergency Response

4  Plan as a "core plan" "supplemented by" various hazard-specific, support and

5  functional annexes which together make up the County's "comprehensive plan for

6  dealing with emergencies in Los Angeles"); Deposition of John Cvjetkovic

7  ("Cvjetkovic depo") at 18:20-19:2 (stating that in the County's "general planning"

8  with respect to "preparedness, response and recovery," "all segments of the

9  population" are included), Exhibit F to Gilbride Decl.

10      Defendants have not constructed separate emergency preparedness plans for each

11  resident depending on that person's needs, nor have Plaintiffs asked for such

12  individualized planning in their request for relief.  Rather, Plaintiffs challenge the

13  City's and County's existing planning efforts as inadequately providing, or failing to

14  provide entirely, for the City's population of people with disabilities.  Plaintiffs'

15  demand for relief is aimed at modifying those existing plans.  Indeed, Plaintiffs seek

16  systemic injunctive relief that would incorporate the emergency preparedness needs of

17  the proposed class of people with disabilities into Defendants' existing emergency

18  management structure.

19  **B.      The Proposed Class Is Comprised of Nearly a Million People**

20  **with Disabilities in the City of Los Angeles Who Plaintiffs Contend Are Not**

21  **Being Served by Defendants' Current Emergency Planning.**

22      The City of Los Angeles Emergency Management Department has stated

23  that "approximately 21% of our city's population has some form of disability."

24  Complaint ¶39 (citing City of Los Angeles Emergency Management Department

25  website at http://emergency.lacity.org/epdpi2e.htm#2).  Given that the population

26  of Los Angeles was calculated at 3,849,378 during the last census, the proportion

27  of that population with disabilities would number some 800,000 people according

28  to the City's own estimates.  *Id.*; *see also* Declaration of Teresa Favuzzi ("Favuzzi

Decl.") at ¶13. Moreover, this figure actually understates the size of the proposed class, which would also include those people who become disabled as a result of injuries or trauma suffered during a disaster and who would need accessible shelter and support services as a result of those temporary disabilities. *See* complaint ¶40; *see also* Favuzzi Decl. at ¶14. Moreover, many people, including people with disabilities, travel to Los Angeles on a daily basis, including for work, school, medical appointments, social events, and a variety of other occasions. *See, e.g.,* Declaration of Sergio Garabay at ¶3 (lives in South Gate but works every day in downtown Los Angeles).

While the particular needs and situations of these hundreds of thousands of individuals with disabilities in the event of an emergency will no doubt vary, as do the emergency needs of people without disabilities, the declaration of Teresa Favuzzi, who is the executive director of the California Foundation for Independent Living Centers and has extensive experience in the field of emergency planning for people with disabilities, sets out a number of elements that comprehensive emergency plans must contain in order for those plans, as a general matter, to be accessible to people with disabilities. Favuzzi Decl. at ¶¶2, 7-10, 15. For example, Ms. Favuzzi explains that emergency responders must be equipped to utilize multiple channels of communication, including text messages and sign language as well as verbal alerts, to notify the entire population of an unfolding emergency situation. Favuzzi Decl. at ¶17. Emergency responders must also be prepared to provide evacuation assistance to those who need it, means of transportation that can accommodate evacuees with disabilities, shelter facilities that are physically accessible, and sufficient electricity, medications, medical equipment and other emergency supplies for people forced to stay in shelters. Favuzzi Decl. at ¶¶18-19.

Various emergency managers for the City and County have also acknowledged the importance of these components of emergency planning in

their deposition testimony, even agreeing that they are "essential." *See, e.g.,* Featherstone depo at 59:22-60:15 (agreeing that people with disabilities will need accommodations with respect to emergency notifications, evacuation assistance, and transportation to shelter); Deposition of Keith Garcia ("Garcia depo") at 33:23-35:3 (describing notification of impending disaster, assistance with evacuating people from their homes, transportation to shelters, provision of emergency shelter, mass evacuations from a geographic area, and recovery from disaster as "essential components of an emergency plan"), Exhibit G to Gilbride Decl.; O'Donnell depo at 36:11-39:8 (notifying the public of impending disaster, helping people to evacuate, providing transportation to shelters, providing emergency shelter and essential supplies at emergency shelters, and assisting the public in recovery are essential components of an emergency plan); O'Donnell depo at 69:21-72:10 (acknowledging that people with disabilities may need accommodations or modifications with respect to emergency notification, evacuation, and shelter).

Yet these same City and County personnel have admitted that the City's and County's emergency plans do not address how these essential services will be provided to people with disabilities. *See, e.g.,* Featherstone depo at 27:9-13 (admission by the general manager of the City's Emergency Management Department that nothing in the City's written emergency plans requires consideration of disability options in any aspect of emergency planning); Featherstone depo at 66:17-24 (stating that the City makes no provision for ensuring that emergency shelters will have supplies of medication or medical equipment); Featherstone depo at 67:21-25 (stating that the City has no plan to transport people with disabilities to emergency shelters); Garcia depo at 36:1-4 (stating that the City's emergency plans do not provide for notifying people with disabilities of an impending disaster); Garcia depo at 36:23-37:2 (testifying that the City has no provision in its emergency plans for assisting people with

disabilities in evacuating their homes); Garcia depo at 37:14-18 (admitting that the City has conducted no inventory of its fleet of accessible vehicles to match its transportation assets against the needs of the population who would need accessible transportation in an emergency); Garcia depo at 42:15-19 (stating that the City does not provide accessible temporary housing units for people with disabilities during the recovery phase of a disaster); Garcia depo at 77:11-14 (stating that the City's emergency plans contain no provision for developing accessible permanent housing in the aftermath of a disaster); O'Donnell depo at 104:18 - 105:13 (denying knowledge of any written or unwritten plan pertaining to mass evacuation of people with disabilities); Cvjetkovic depo at 84:16-85:3 (statement by the head of the County department responsible for mass care and shelter that he does not know whether emergency shelters have backup generators for people who need to plug in medical equipment); Cvjetkovic depo at 29:12-30:6 (admitting that County Department of Public Social Services is supposed to operate medically fragile shelters but does not).

The named plaintiffs, as well as members of the proposed class, suffer direct harm because of Defendants' failure to include the needs of people with disabilities in their emergency planning.  For example, Plaintiff CALIF has expended resources to advocate for its constituents who are not served by existing City and County emergency plans, and the organization must also provide direct assistance to those constituents when disaster strikes and Defendants fail to assist them.  Complaint ¶12.  Plaintiff Audrey Harthorn reports that she is "very afraid" that if an earthquake required her to evacuate her home, she would be stranded because she cannot evacuate independently and the City and County have made no arrangements to provide her with assistance.  *See* Declaration of Audrey Harthorn ("Harthorn Decl.") at ¶7.  Many other class members have stated that they would have needs for physical access, accommodations and services in the case of emergency, including such things as accessible shelters, assistance in

evacuating, accessible transportation, and access to medication and electricity in the event of removal from their homes. *See, e.g.,* Declaration of Richard Hernandez ("Hernandez Decl.") at ¶5 (describing need for accessible transportation and shelter facilities in event of an emergency); Declaration of Leonard Woods at ¶5 (describing need for inclined cot and access to medications at an emergency shelter); Declaration of Allen McCorkendale ("McCorkendale Decl.") at ¶¶5, 8 (explaining need for assistance in evacuating and for access to electricity to power his wheelchair and respirator); Declaration of Alicia Pedroza at ¶5 (stating need for her visually impaired daughter to receive written emergency preparedness materials or instructions in Braille or large print); Declaration of Christopher Luna ("Luna Decl.") at ¶¶4, 7 (explaining that he would require emergency notifications via video relay or text message as well as a sign language interpreter and accessible communications equipment at an emergency shelter to accommodate his deafness).  These class members have stated that they do not know how they would receive these things, and are worried about the ability of the City and County to serve their needs in case of a major emergency. *See, e.g.,* Hernandez Decl. at ¶¶6, 9; McCorkendale Decl. at ¶¶6-10; Luna Decl. at ¶¶6-8.

## C.        Proposed Class Representatives.

### Communities Actively Living Independent and Free ("CALIF")

Organizational Plaintiff CALIF is an independent living center ("ILC") based in downtown Los Angeles: a private, non-profit community-based corporation providing advocacy, resources and individualized assistance to people with disabilities in the Los Angeles area. CALIF is devoted to the goal of full inclusion, equality, and civil rights for all people with disabilities, especially in the underserved minority communities of Los Angeles. CALIF's advocacy and direct service work is based on a close association with its constituents.  Many of

the founders and leaders of CALIF are themselves seniors and/or people with disabilities. Accordingly, the interests that CALIF seeks to protect through this litigation are germane to its mission and purpose. *See* Complaint ¶11; Declaration of Lilibeth Navarro ("Navarro Decl.") at ¶3. CALIF and its constituents have been directly harmed by the City's and county's failure to include people with disabilities in their emergency planning. *See* Complaint ¶12; Navarro Decl. at ¶¶10-12.

### Audrey Harthorn

Named Plaintiff Audrey Harthorn is a person with a disability under all applicable statutes. She is a resident of Los Angeles who suffers from arthrogryposis, a congenital condition causing multiple joint contractures and lack of muscle development. Ms. Harthorn uses a power wheelchair for mobility but cannot get into and out of her chair independently due to her lack of muscle coordination. Complaint ¶13; Harthorn Decl. ¶2. She does not believe that the City or County have plans in place to assist her in the event of a necessary evacuation and fears that she would become stranded in her apartment as a result. Complaint ¶17; Harthorn Decl. ¶¶7, 11. Ms. Harthorn also needs wheelchair-accessible transportation, a way to charge her wheelchair batteries daily, and sheltering options with accessible bathrooms and accessible paths of travel, but she is concerned that the City and County would not be able to accommodate her in these respects either in the event of an emergency. Complaint ¶¶15-16; Harthorn Decl. ¶¶4, 5, 8, 9.

### III.   LEGAL ARGUMENT

**A.         The Proposed Class.**

Plaintiffs seek an order and judgment enjoining Defendants from violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, California Civil Code § 54, *et seq.*, and California Government Code § 11135, and requiring Defendants to develop and implement a Emergency Preparedness

1    plan that addresses the emergency needs of people with disabilities. As such,

2    Plaintiffs move to certify a class under Fed. R. Civ. P. 23(a) and 23(b)(2)

3    consisting of:

4    All people with disabilities, as defined by the Americans With Disabilities Act,

5    who are within the City of Los Angeles and the jurisdiction served by the City of

6    Los Angeles' and County of Los Angeles' emergency preparedness programs and

7    services.

8    　　　　Plaintiffs seek only injunctive and declaratory relief on behalf of the class.

9    There is no claim for damages.

10   **B.           The Rule 23 Standards.**

11   　　　　Plaintiffs seek class certification to ensure that any relief obtained extends

12   to the large group of people who are affected by the current lack of emergency

13   preparedness planning for people with disabilities. In order to be certified as a

14   class, plaintiffs must show they meet the requirements of Rule 23(a) as well as

15   one of the prongs of rule 23(b).  Fed. R. Civ. P. 23.

16   　　　　Under Rule 23(a), class certification is proper if: (1) the class is so

17   numerous that joinder of all members is impracticable; (2) there are questions of

18   law or fact common to the class; (3) the claims or defenses of the representative

19   parties are typical of the claims or defenses of the class; and (4) the representative

20   parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.

21   23(a).  In addition to meeting the requirements of Rule 23(a), the class must also

22   be certifiable under one of three sub-provisions of Rule 23(b). Fed. R. Civ. P.

23   23(b); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997).  Here,

24   Plaintiffs seek certification under Rule 23(b)(2), pursuant to which class

25   certification is proper if "the party opposing the class has acted or refused to act

26   on grounds generally applicable to the class, thereby making appropriate final

27   injunctive relief or corresponding declaratory relief with respect to the class as a

28   whole."  Fed. R. Civ. P. 23(b)(2).

1   Rule 23 gives the district court "broad discretion" in determining whether

2   to certify a class. *Armstrong v. Davis,* 275 F.3d 849, 872 n.28 (9th Cir. 2001);

3   *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). However,

4   in making this decision, "[t]he court is bound to take the substantive allegations of

5   the complaint as true . . . ." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir.

6   1975); *Brown v. Brewer*, 2009 U.S. Dist. LEXIS 47535, *4 (C.D. Cal. May 29,

7   2009). While the court must determine that plaintiffs have alleged facts sufficient

8   to meet the Rule 23 requirements, the court does not consider whether plaintiffs

9   will ultimately prevail on their claims. *United Steel, Paper & Forestry, Rubber,*

10  *Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*,

11  593 F.3d 802, 808 (9th Cir. 2010); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

12  177-178 (1974) (citing *Miller v. Mackey International,* 452 F.2d 424, 427 (5th

13  Cir. 1971) ("In determining the propriety of a class action, the question is not

14  whether the plaintiffs have stated a cause of action or will prevail on the merits,

15  but rather the requirements of Rule 23 are met")); *Jordan v. Los Angeles County*,

16  669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810

17  (1982); *Moore v. Hughes Helicopters, Inc.* 708 F.2d 475, 480 (9th Cir. 1983);

18  *Mazza v. Am. Honda Motor Co*., 254 F.R.D. 610, 616 (C.D. Cal. 2008); *Siddiqi v.*

19  *Regents of the Univ. of Cal.,* 2000 U.S. Dist. LEXIS 19930, *9 n.3 (N.D. Cal.

20  Sept. 6, 2000) ("[A]t this stage of the litigation, the question is not the ultimate

21  liability of [defendants]...but whether plaintiffs' claims are appropriate for class

22  treatment").

23  To the extent evidence on the merits is relevant at all in the instant motion,

24  its relevance extends only to the requirements of Rule 23. *See Hanon v.*

25  *Dataprods. Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *see also Gen'l Telephone*

26  *Company of the Southwest v. Falcon*, 457 U.S. 147, 159 (1982) (requiring some

27  evidence that alleged violations extend beyond named Plaintiffs' claims); *Brown*

28  *v. Brewer*, 2009 U.S. Dist. LEXIS 47535, *4 (C.D. Cal. May 29, 2009).

As set forth below, Plaintiffs satisfy all four requirements of Rule 23(a) and the requirements of Rule 23(b)(2) and this action should be certified as a class action.

### C.     The Class Meets All the Requirements of Rule 23(a).

#### 1.     The Class Is So Numerous that Joinder Is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs do not need to show that joinder would be impossible, only impracticable. *Haley v. Medtronic, Inc.* 169 F.R.D. 643, 647-648 (C.D. Cal. 1996). It is not necessary for Plaintiffs to be able to state the "exact number of potential class members" nor is a particular number of class members required to establish numerosity; instead, "whether joinder is impracticable depends on the facts and circumstances of each case." *Bates v. United Parcel Service,* 204 F.R.D. 440, 444 (N.D. Cal. 2001); *True v. Am. Honda Motor Co., Inc.,* 2009 U.S. Dist. LEXIS 29814, *10 (C.D. Cal. Mar. 25, 2009); *see also Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D. Cal. 1994). Numerosity is generally satisfied where general knowledge and common sense indicate that the class is large. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982); *Cervantez v. Celestica Corp.,* 253 F.R.D. 562, 569 (C.D. Cal. 2008);  *Doe v. Los Angeles Unified Sch. Dist.*, 48 F.Supp.2d 1233, 1239 (C.D. Cal. 1999); 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §3:3 (4th ed. 2006) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.")

Here, Defendants' own published data as well as general knowledge and common sense indicate that the proposed class is large. Census data shows there are approximately 800,000 people with disabilities living in the city of Los Angeles. Courts often appropriately consider statistical and census data in determining whether the numerosity requirement has been met. *Californians for*

1   *Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D.

2   Cal. 2008) (certifying a class of individuals with mobility and vision disabilities

3   challenging access barriers along pedestrian rights of way maintained by state

4   department of transportation).

5          Thus, the number of people with disabilities that are affected by

6   Defendants' lack of emergency planning is more than sufficient to make joinder

7   impracticable given that numerosity has generally been found when the class

8   consists of 40 or more members. *See* 1 Herbert B. Newberg & Alba Conte,

9   *Newberg on Class Actions* §3.5 (4th ed. 2006) (the plaintiff whose class is 40 or

10  greater should meet the test of Rule 23(a)(1) on that fact alone); James William

11  Moore et al., *5 Moore's Federal Practice* §23.22(3)(a) (3d ed. 2003) (classes with

12  more than 40 members generally held sufficient to meet numerosity requirement);

13  *Burdick v. Union Sec. Ins. Co.*, 2008 U.S. Dist. LEXIS 108616, *5-6 (C.D. Cal.

14  Mar. 25, 2008); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal.

15  2008). Indeed, courts have certified classes many times smaller. *See, e.g.*, *In re*

16  *Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557, 562 (N.D. Cal. 1999) (numerosity

17  satisfied where record evidenced "more than twenty-five" class members).

18         In addition, joinder here would be further impracticable because it would

19  be nearly impossible to identify all of the members of this large class.  *See Arnold*

20  *v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D. Cal. 1994)

21  ("[b]y the very nature of this class, its members are unknown and cannot be

22  readily identified."); *Sung Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120

23  (C.D. Cal. 2008); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal.

24  2004).  "[W]here the class includes unnamed, unknown future members, joinder

25  of such unknown individuals is impracticable and the numerosity requirement is

26  therefore met." *Int'l Molders' and Allied Workers Local Union No. 164 v.*

27  *Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983), *citing Jack v. Am. Linen Supply*

28  *Co.*, 498 F.2d 122, 124 (5th Cir. 1974); *see also Jordan v. County of Los Angeles*,

669 F.2d 1311, 1320 (9th Cir. 1982, *vacated on other grounds*, 459 U.S. 810 (1982), ("The joinder of unknown individuals is inherently impracticable."), *cited in Immigrant Assistance Project of Los Angeles County Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002).

The proposed class accordingly meets the numerosity requirement of Rule 23(a)(1).

### 2.    There Are Numerous Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement permissively: "All questions of fact and law need not be common to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *accord Maddock v. KB Homes*, Inc., 248 F.R.D. 229, 238 (C.D. Cal. 2007) citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982) ("The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement."). Commonality can even be met where only one of the many issues of law or fact is common to all class members. *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal. 1983); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000) (finding this element can be met by raising a single common issue that is central to the class).

The general practice in civil rights suits is to find that "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *see also Arnold v. United Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement is "met by the alleged existence of common discriminatory practices").

Moreover, actions for injunctive relief are generally considered to present

1   common questions. *See Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 57 (3rd

2   Cir. 1994) ("[B]ecause they do not also involve an individualized inquiry for the

3   determination of damage awards, injunctive actions by their very nature often

4   present common questions satisfying Rule 23(a)(2).") (*quoting* 7A Charles Alan

5   Wright et al., *Federal Practice and Procedure* § 1763, at 247 (2d ed. 1986)); *see*

6   *also Riker v. Gibbons*, 2009 U.S. Dist. LEXIS 35449, *8 (D. Nev. Mar. 31, 2009).

7       This is a quintessential civil rights class action, in that it revolves around

8   the City's and County's illegal system-wide policies and practices, and their

9   system-wide failures to take necessary action, which have affected all class

10  members in the same manner.  This is an action based solely on defendants'

11  actions, not plaintiffs' individual circumstances. Plaintiffs' claims all stem from a

12  common set of facts, as the systemic failures described above have affected all

13  class members in the same manner; namely, such failures cause class members to

14  worry about their safety if an emergency were to occur and such failures cause all

15  class members to be in danger when emergencies do occur. *See Rosario v.*

16  *Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992) ("The fact that there is some

17  factual variation among the class grievances will not defeat a class action … a

18  common nucleus of operative fact is usually enough to satisfy the commonality

19  requirement.").

20      Similarly, that the class in this case includes people with various

21  disabilities, or that there may be some issues which affect one subgroup more than

22  the other, does not defeat commonality.  *See Armstrong*, 275 F.3d at 868

23  (rejecting call from defendants for separate lawsuits for each disability group, and

24  finding commonality where class members in all groups "suffer similar harm"

25  from an alleged discriminatory practice); *Rodde v. Bonta*, 357 F.3d 988 (9th Cir.

26  2004) (certifying class consisting of: "All present and future recipients of the

27  Medicaid program: (a) who reside in the County of Los Angeles; (b) who have or

28  will have disabilities; and (c) who, because of their disabilities[,] need or will

need inpatient and/or outpatient rehabilitative and other medical services that are currently provided at [the hospital]"); *Pottinger v. Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989) (certifying a class consisting of all those who are "involuntarily homeless" within a geographic area, stating the "status of the plaintiffs as homeless is a fact common to the class"); *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (certifying class of "All persons in the City of Fresno who were or are homeless, without residence, after October 17, 2003, and whose personal belongings have been unlawfully taken and destroyed a sweep, raid, or clean up by any of the Defendants").

Thus, the determination of the City and County's liability will turn on whether the City's and County's systemic inactions and actions, including inadequate policies, have been sufficient to satisfy their obligations under applicable law.  That inquiry will involve numerous questions of both law and fact that are common to the class, and thus better answered in a single class action, rather than in a multitude of individual suits addressing many of the same questions.

The commonality of the legal issues raised is readily apparent from Plaintiffs' Complaint, which outlines a number of causes of action based on the City's and County's alleged violations of various state and federal anti-discrimination provisions.  Plaintiffs contend that Defendants have violated these non-discrimination laws by failing to make adequate provisions in their emergency planning for individuals with disabilities.  The class members, because they are qualified individuals with disabilities, have been harmed by these planning failures. Consequently, these same questions exist for the prospective class as a whole, including the common questions of whether Defendants are violating Title II of the ADA, 42 U.S.C. § 12131, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., by failing to make their programs, services and activities accessible to and useable by persons with disabilities, and

otherwise discriminating against persons with disabilities, as set forth above; and whether Defendants are violating California state law, including California Government Code Section 11135(a), and Civil Codes 51 and 54, by similarly failing to make their programs, services and activities accessible to and useable by persons with disabilities, and otherwise discriminating against persons with disabilities.

The allegations in this case give rise to numerous questions of fact that are common to the class as a whole, all of which focus solely on the City's and County's policies and systemic actions and failures to act. The common questions include whether the City's and County's emergency plans exclude people with disabilities, discriminate against people with disabilities, and/or deny people with disabilities the benefits of those plans, including whether these plans account for the needs of people with disabilities with respect to communication, evacuation, transportation, and shelters.

In addition to the foregoing, and as explained above, the same policies, practices and procedures apply to the class as a whole. Moreover, the records, expert testimony and other evidence documenting the state of Defendants' existing emergency plans are the same across the class as a whole. In short, the facts that will establish whether the City and County are liable to the class as a whole are the same facts that would be raised in individual class member suits.

### 3. The Named Plaintiffs' Claims Are Typical of the Class.

Under Rule 23(a)(3), class certification is proper when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality under Rule 23(a)(3) requires the Court to determine "whether the named plaintiffs' individual circumstances markedly diverge or whether the legal theories and claims differ as to defeat the purposes of maintaining a class." *Von Colln v. County of Ventura*, 189 F.R.D. 583, 591 (C.D. Cal. 1999); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (typicality requires that

the named plaintiffs be members of the class they represent and "'possess the same interest and suffer the same injury'" as class members) (internal citation omitted); *Hodgers-Durgin v. Vina*, 165 F.3d 667, 679 (9th Cir. 1999) ("The typicality inquiry is intended to assess…whether the named plaintiffs have incentives that align with those of absent class members so . . . that the absentees' interests will be fairly represented.").

In order to satisfy typicality, the named plaintiffs' claims need not be identical to the claims of the class. Rather, the claims are typical if they are "reasonably co-extensive with those of absent class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 24.25 at 24-105 (3d ed. 1992). It is sufficient for plaintiffs' claims to "arise from the same remedial and legal theories" as the class claims. *Arnold v. UA Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) (citations omitted).

A finding of commonality frequently supports a finding of typicality. *See Gen'l Telephone. Company of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting how the commonality and typicality requirements "merge"). Relatedly, "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of . . . factual difference." *In re Heritage Bond Litig.*, 2004 WL 1638201, *7 (C.D. Cal. July 12, 2004); *Burdick v. Union Sec. Ins. Co.*, 2008 U.S. Dist. LEXIS 108616, *7-8 (C.D. Cal. Mar. 25, 2008). When discrimination is alleged, it is sufficient that the named plaintiffs have suffered the same type and manner of injury from the same allegedly discriminatory practice as the other members of the class.  *See Dukes v. Wal-Mart Stores Inc.*, 222 F.R.D. 137, 166 (N.D. Cal. 2004); *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994) ("cases challenging the same unlawful conduct which affects both the named plaintiffs

and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims"); *Moeller v. Taco Bell Corp.,* 220 F.R.D 604, 611 (N.D. Cal. 2004) (class members need only have injuries similar to those of the named plaintiffs); *Int'l Molders & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 463 (N.D. Cal. 1983) (typicality is found where the class representatives' claims "arise from the same practice and course of conduct that forms the basis of the claims of the class" and are based on the same legal theory).

In this case, the named Plaintiffs have alleged that they suffered the same type of harm as members of the class, caused by the same system-wide failures of the City and County's lack of emergency preparedness planning for people with disabilities, and the named Plaintiffs' claims and class claims are based on the same legal theories.  Like the members of the class, both Plaintiff CALIF and Plaintiff Harthorn allege that they have been directly harmed by the City's and County's failure to include people with disabilities in their emergency planning. This harm takes the form of fear and anxiety, as well as elevated risk of suffering death or injury when the next emergency strikes Los Angeles. The lack of emergency preparedness that Plaintiffs CALIF and Harthorn have encountered is representative of the common barriers that class members have encountered.  *see also Arnold* 158 F.R.D. at 450 ("where disabled persons challenge the legal permissibility of architectural design features, the interests, injuries, and claims of the class members are, in truth, identical such that *any* class member could satisfy the typicality requirement for class representation.").  The named Plaintiffs' individual claims and the class claims in this case are brought under the same laws and share the very same legal theories, and the relief that Plaintiffs seek – declaratory relief and injunctive relief requiring the City and County to address the various system-wide failures – is class-wide.

4.     **Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Representation is adequate if (i) the named representatives appear able to prosecute the action vigorously through qualified counsel; and (ii) there is no antagonism or conflict of interest between the named representatives and the other members of the class." *Hanlon*, 150 F.3d at 1020.  Adequate representation is usually presumed in the absence of contrary evidence.  *See* 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §7:24, 78.  A defendant who opposes certification on this basis must demonstrate a "real probability of conflict that goes to the subject matter of the class lawsuit"; speculation is insufficient.  *Int'l Molders & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 464 (N.D. Cal. 1983). "This standard requires similarity, not identity, of interests. Nor does it preclude some unique interests; it only precludes adverse interests."  *Dukes v. Wal-Mart Stores Inc.*, 222 F.R.D. 137, 168 (N.D. Cal. 2004).  Representative plaintiffs do not need to have intimate knowledge of the allegations. *Brink v. First Credit Res.*, 185 F.R.D. 567, 571 (D. Ariz. 1999) ("plaintiff need not possess no more than marginal familiarity with the facts of his case, and need not fully understand the legal theories, particularly when he or she is represented by competent counsel.")

As set forth in declarations submitted herewith, the individual class representatives are deeply committed to improving access for persons with disabilities and are ready, willing and able to act as effective advocates for the class in this case. *See* Harthorn Decl. at ¶¶12-13.  Similarly, organizational Plaintiff CALIF has worked hard for many years to improve access for persons with disabilities, and is fully prepared to vigorously represent both its clients and the class in this case.  Navarro Decl. at ¶¶3, 4, 13, 14.  Moreover, there is no

1  conflict between the interests of the class representatives and those of the other

2  members of the class.

3      Plaintiffs have likewise chosen accomplished counsel who are recognized

4  experts in class action litigation and the protection of the rights of persons with

5  disabilities.  Plaintiffs' counsel here is highly qualified and experienced, and their

6  resources are more than adequate to represent the class completely. *See*

7  Declaration of Shawna L. Parks at ¶¶3-19; Declaration of Sidney Wolinsky at

8  ¶¶2-13.  Both firms in this matter have been counsel in numerous class action

9  lawsuits involving persons with disabilities, and have obtained verdicts and

10 settlements that have benefited large groups of persons with disabilities. *See id.*

11 Moreover, both have extensive experience representing individuals with

12 disabilities in class action and systemic reform litigation.  Thus, both the named

13 Plaintiffs and their attorneys are well-qualified to litigate their claims against Los

14 Angeles City and County. *Sung Park v. Ralph's Grocery Co.,* 254 F.R.D. 112,

15 122 (C.D. Cal. 2008) ("based on their extensive experience in complex litigation,

16 the Court concludes that the…[attorney's]…are competent class counsel.").

17      **D.    The Conditions of Rule 23(b)(2) are Met.**

18      Plaintiffs seek to certify the class under Federal Rule of Civil Procedure

19 23(b)(2), which applies when "the party opposing the class has acted or refused to

20 act on grounds generally applicable to the class, thereby making appropriate final

21 injunctive relief or corresponding declaratory relief with respect to the class as a

22 whole." Fed. R. Civ. P. 23(b)(2). For a class to be certified under Rule 23(b)(2),

23 "it is sufficient if class members complain of a pattern or practice that is generally

24 applicable to the class," even if not all class members have been injured by the

25 challenged practice.  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998);

26 *Burdick v. Union Sec. Ins. Co.,* 2008 U.S. Dist. LEXIS 108616, *13 (C.D. Cal.

27 Mar. 25, 2008) citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3rd

28 Cir. 1994) (Rule 23(b)(2) certification is appropriate when a "defendant's conduct

is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct"). The requirements of Rule 23(b)(2) are also "almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal v. Casey,* 43 F.3d 48, 58 (3rd Cir. 1994) (citation omitted); *see also Von Colln v. County of Ventura*, 189 F.R.D. 583, 592 (C.D. Cal. 1999) ("If Rule 23(a) prerequisites have been met and injunctive relief has been requested, the action should be allowed to proceed under subdivision(b)(2).") (citation omitted).

The claims raised by Plaintiffs in this action are precisely the sorts of claims that Rule 23(b)(2) was intended to facilitate. "Rule 23(b)(2) class actions were designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." 1966 Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966); *see* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §4.11 (3rd ed., 1992); Wright, Miller & Kane, *Federal Practice & Procedure* Civil 2d, § 1775, p. 470 (1986).

Indeed, suits brought to vindicate these types of rights are exactly the types of suits for which Rule 23(b)(2) was designed. *See Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994) (race discrimination case); *Arnold*, 158 F.R.D. at 452 (disability discrimination case). "[D]iscrimination cases for injunctions against state or local officials are the 'paradigm' of [Rule 23(b)(2)] cases." *Comer,* 37 F.3d. at 796; *see also Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) ("Subsection (b)(2) was 'intended primarily to facilitate civil rights class actions, where the class representatives sought broad injunctive relief against discriminatory practices.'") (citation omitted); *Walters v. Reno*, 145 F.3d, 1032, 1047 (9th Cir. 1998); Advisory Committee Notes to Rule 23(b)(2).

1    As discussed above, all of the Rule 23(a) requirements are satisfied in this

2    case.  Moreover, Plaintiffs' claims in this case are brought on behalf of a large

3    and amorphous class, and stem from deficiencies with the City's and County's

4    policies and practices that apply to the entire class.  Finally, Plaintiffs in this case

5    only seek class-wide injunctive and declaratory relief to address such deficiencies,

6    and do not seek any damages.  Certification under Rule 23(b)(2) is thus proper.

7    **E.    Class Notice is Not Required at This Time**

8    The notice requirements found in Rule 23(c)(2) are inapplicable to Rule

9    23(b)(2) class actions.  Fed. R. Civ. P. 23(d); *see Elliot v. Weinberger*, 564 F.2d

10   1219, 1228 (9th Cir. 1977), *aff'd in relevant part, rev'd in part*, 442 U.S. 682

11   (1979).  *Accord Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1336-37 (1st

12   Cir. 1991); 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §

13   8.05 ("[C]lass actions seeking declaratory or injunctive relief under Rule 23(b)(2)

14   are not subject to the individual notice requirements of Rule 23(c)(2).").

15   Rule 23(c)(2)(A) gives the Court discretionary power to direct appropriate

16   notice to the class.  Such notice is not generally necessary in a Rule 23(b)(2) class

17   action where named plaintiffs are adequate class representatives with experienced

18   counsel.  *See Elliot,* 564 F.2d at 1229 (notice not necessary for nationwide (b)(2)

19   class where name plaintiffs are adequate representatives with experienced

20   counsel); *Stolz v. United Brotherhood of Carpenters*, 620 F. Supp. 396, 408 (D.

21   Nev. 1985) (notice unnecessary for (b)(2) class where named plaintiffs are

22   adequate representatives).  Moreover, because absent class members cannot opt

23   out of a Rule 23(b)(2) class, the underlying reasons for notice in a (b)(3) class are

24   not at issue in this case.  *See Elliot*, 564 F.2d at 1229 n.14.

25   Because Plaintiffs are adequate class representatives represented by

26   experienced counsel, there is no need for notice to be given before the proposed

27   class is certified.  Accordingly, Plaintiffs respectfully requests that this Court

28

CALIF et al., v. Los Angeles City and County
Case No.: CV 09-0287 CBM (RZx)                    -23-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

exercise its discretion to certify the class without requiring any notice to absent class members, at least at this stage of the litigation.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the class set forth in the Notice of Motion, appoint Plaintiffs as the class representatives, and appoint Disability Rights Advocates and Disability Rights Legal Center as class counsel.

DATED: March 15, 2010               Respectfully submitted,

                                    DISABILITY RIGHTS ADVOCATES
                                    DISABILITY RIGHTS LEGAL CENTER

                                    _____
                                    Karla Gilbride
                                    Attorneys for Plaintiffs