CARMEN A. TRUTANICH, City Attorney
GARY G. GEUSS, Chief Assistant City Attorney (SBN 128022)
**LAURIE RITTENBERG**, Assistant City Attorney (SBN 106683)
**GABRIEL S. DERMER**, Deputy City Attorney (SBN 229424)
laurie.rittenberg@lacity.org; gabriel.dermer@lacity.org
200 North Main Street, Room 916
Los Angeles, California 90012
Telephone: 213.473.6850
Facsimile: 213.473.6818

Attorneys for Defendant CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br> v. <br> CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity, <br><br> Defendants. | **CASE NO.:  CV-09-0287 CBM (RZx)** <br><br> **DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date: September 27, 2010 <br> Time: 11:00 a.m. <br> Ctrm: 2 <br> Hon. Consuelo B. Marshall |

1
2

**TABLE OF CONTENTS**

3   TABLE OF AUTHORITIES ........................................................................................ iii
4   I.   INTRODUCTION ..............................................................................................1
5   II.  THE FACTS .......................................................................................................1
6   III. ARGUMENT ......................................................................................................2
7        a.   Plaintiffs Have Not Proven Disability Discrimination Under The ADA Or Section
8             504 ...............................................................................................................2
9        b.   Plaintiffs Have Not Shown The Denial Of "Meaningful Access" ...........3
10       c.   Plaintiffs Are Not Entitled To Summary Judgment Under State Law ....8
11       d.   Plaintiffs' Claim That There Is A "Remedy" Is False.............................9
12  IV.  CONCLUSION ................................................................................................11

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Bird v. Lewis & Clark College*, 303 F.3d 1015 (9th Cir. 2002) .......................................5
*Celano v. Marriott Int'l, Inc.*, 2008 U.S. Dist. LEXIS 6172 ..........................................9
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..................................................5
*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996)...................................................3
*DeShaney v. Winnebago Cty. Dep't of Social Services*, 489 U.S. 189 (1989) .................6
*Gilligan v. Morgan*, 413 U.S. 1 (1973).................................................................9, 10
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................5
*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) ........................................5, 6
*Olmstead v. Zimring*, 527 U.S. 581(1999).....................................................................8
*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976 (9th Cir. 1997)..........................................................................2, 6, 7

**Federal Regulations**

28 C.F.R. 35.130(b)(7).........................................................................................4
28 C.F.R. 35.150 ..................................................................................................3

**Federal Rule**

Federal Rule of Civil Procedure, 56(c) ..........................................................................1

**State Statutes**

California Code of Civil Procedure section 437c(g) .......................................................8
California Government Code section 11135 ..................................................................9

## I. INTRODUCTION

Plaintiffs' motion for summary judgment is not based on "undisputed facts," as it must be. To the contrary, it is based on disputed opinions. And for Plaintiffs' motion for summary judgment to be granted, they must show that there are no disputed material *facts* (Fed. R. Civ. P. 56(c)), and that they are entitled to judgment as a matter of law. This they have not done, nor can they do.

## II. THE FACTS

Plaintiffs have put forth before this Court, in support of their Motion, 243 allegedly uncontroverted facts. A brief review of these shows that most are not "facts" at all; rather, they are opinions. More importantly, many of these opinions are disputed. For example, Plaintiffs' entire motion fails to reference the necessity of personal planning or preparedness. The City strongly disputes this apparent position, because personal emergency planning and preparedness is critical to a person's ability to survive. [City's Fact ["CF"] 1] Likewise, Plaintiffs allege [Plaintiffs' Fact ["PF"] 160] that the City must stockpile medicine in the event that people with disabilities need them, while the City absolutely disputes this notion, given that the City is not obligated by the ADA or any other law to provide personal assistive devices or medications.

In addition to all of the disputed "facts" presented by Plaintiffs, the City presents true facts that cannot be disputed. For example, it is a fact that Plaintiff Harthorn has never contacted the City's police or fire department and requested any assistance in the event of an emergency. CF 4. She also has never been to an emergency shelter in the City, nor does she know whether City shelters would or would not be accessible. CF 5, 6.

Similarly, Plaintiff CALIF has never requested that the City give a presentation on personal emergency preparedness to its consumers, despite the fact that the City's Fire Department has such a program. CF 13, 14. In addition, like Plaintiff Harthorn, CALIF's executive director has never gone to an emergency shelter in the City. CF 16.

And perhaps most fundamental, the City has presented evidence that it makes

1

reasonable accommodations, when requested, in responding to emergencies. CF 3, 20. The City's facts, together with the various disputes concerning Plaintiffs' 243 "facts," virtually mandate the denial of Plaintiffs' motion for summary judgment.

### III. ARGUMENT

#### a. Plaintiffs Have Not Proven Disability Discrimination Under The ADA Or Section 504

"To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability.* Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program *solely by reason of his disability*; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis in original; citations omitted).

Importantly, Plaintiffs do not show what the City's emergency plans and procedures actually *are*; rather, they opine that "the essential components of an emergency preparedness program are well-established" and what the City's plan should be. *See* Motion at 2:26. Similarly, the Plaintiffs do not show what particular service, program or activity the City has provided, or intends to provide, to the "general" population that it does not provide, or intend to provide, to people with disabilities; rather, they simply conclude, based on these aspirational "components," that the City "fails to provide for the unique needs of persons with disabilities or to make reasonable accommodations." Motion at 4:17.

Of course, such aspirations and conclusions do not entitle Plaintiffs to summary judgment. Indeed, not only are most of Plaintiffs' claims essentially premised on hypothetical scenarios or opinions, they also apparently fail to recognize that the City's

2

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

emergency plans, whatever they may be, must be accessible when viewed *in their entirety*, *see* 28 C.F.R. 35.150, which they indisputably are. For example, even Plaintiffs recognize that the City has surveyed some potential shelter sites for accessibility. Motion at 5:14. More fundamentally, they present *no* evidence showing the remaining potential sites are *not* accessible. *See,* CF 6, 16.

Likewise, the City has presented evidence that its actual disaster response is non-discriminatory, and that reasonable accommodations would be made when requested. CF 3, 20. Accordingly, it is impossible to see how Plaintiffs, who have the burden of proof to demonstrate *actual* discrimination, have made a showing entitling them to summary judgment.

### b. Plaintiffs Have Not Shown The Denial Of "Meaningful Access"

Plaintiffs attempt to find support for their motion for summary judgment, which is not based on *fact*, in two seminal Ninth Circuit cases where ADA violations were found: *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) and *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004). A review of both of these cases, where government took affirmative action and/or did not provide reasonable accommodations, conclusively demonstrates that Plaintiffs have failed to meet their burden here.

In *Crowder*, the plaintiffs were visually impaired persons who use guide dogs and sought an exemption from the state's imposition of quarantine on carnivorous animals entering the state. *Crowder*, 81 F.3d at 1481. In remanding the case so the trial court could determine whether the plaintiffs' proposed modifications were reasonable, the Court found that such a quarantine "effectively precludes visually-impaired persons from using a variety of public services, such as public transportation, public parks, government buildings and facilities, and tourist attractions, where humans or animals are inevitably present." *Id.* at 1485. Importantly, the "evidence produced in support of the parties' motions for summary judgment established that the state's quarantine requirement denies visually-impaired persons the ability to make meaningful use of services the state provides." *Id.* at 1482.

3

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The evidence and analysis in *Rodde* was similar. There, the plaintiffs challenged the County's decision to shut a County hospital dedicated primarily to providing inpatient and outpatient rehabilitative care to disabled individuals. *Rodde*, 357 F.3d at 990-91. As in *Crowder*, there was evidence presented by the *Rodde* plaintiffs that closing the hospital represented a government action having a disproportionate burden on people with disabilities. *Id.* at 991-92.

The facts (and analysis) of this case stand in true contrast to *Crowder* and *Rodde*. Here, the City has not taken *any* action which disproportionately burdens people with disabilities. Moreover, the Plaintiffs have not shown that the City has taken any action at all, as the entities in *Crowder* or *Rodde* did, that burdens anyone. The Plaintiffs have not shown what the City of Los Angeles has done and how it has burdened them. To the contrary, the evidence here is that the City has not received any reasonable accommodation requests for assistance, or complaints, from people with disabilities in its disaster response and recovery efforts. *See*, *e.g.*, CF 17.

The crux of Plaintiffs' entire motion is that the City does not have an emergency preparedness plan that comports to their liking. This is what their 243 mostly disputed "facts" make clear. For instance, what is the legal relevance of whether or not City employees have looked at reports from other jurisdictions (itself a disputed fact)? The answer is none. The City can only be *liable* when it has a public program or service that *excludes* people with disabilities by reason of those disabilities. *Weinreich*, 114 F.3d at 978.

There is no evidence presented by Plaintiffs as to what service the City actually provides (not ideally should provide) for its residents generally that it does not provide for them. Similarly, Plaintiffs have not offered any evidence that they requested a reasonable accommodation, *see* 28 C.F.R. 35.130(b)(7), which the City refused. Again, the evidence, if anything, is to the contrary. CF 3, 20.

Perhaps Plaintiffs' motion refers to the City's "unsuccessful motion to dismiss" (at 6:4) because they still have not articulated an actual claim of discrimination and they

4

certainly have not met their burden of proof in proving such a claim.  For instance, Plaintiffs ask this Court to find the City liable for a *violation* of the ADA because it allegedly "failed to include [disability community input in] creating its emergency plans." Motion at 7:18.  As an initial matter, the City disputes this "fact" given that it has open meetings for both the Commission on Disability and the Emergency Management Committee (as required by State law) and does not discriminate against people with disabilities from attending, participating, commenting, and becoming involved, should they so desire.  *See, e.g.,* Kaufman Decl., ¶ 27.  Equally important, there is nothing in the ADA or any other law that *requires* the City to include *any* group in *creating* its emergency plans.  Indeed, nothing has changed from the time Plaintiffs filed their complaint to the present; they yet do not have a cognizable claim for discrimination.  The evidence does not show a service, program or activity for which they have not been reasonably accommodated.

And as their complaint foreshadowed, Plaintiffs have not presented any evidence that they have been denied a City service.  Their claims remain utterly unfounded and hypothetical.  *Crowder* and *Rodde* could not be any more inapposite.  Accordingly, and aside from disputed facts, *Bird v. Lewis & Clark College*, 303 F.3d 1015 (9th Cir. 2002) sets forth another basis for denying Plaintiffs' motion: "In the context of declaratory and injunctive relief, [the plaintiff] must demonstrate that she has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that she will again be wronged in a similar way.'" *Id.* at 1019 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Plaintiffs' presentation to this Court of their idealized emergency plan, and assertion that the City does not have same, cannot warrant the imposition of any "relief." The Plaintiffs have not reasonably alleged that the *City* has caused them a concrete harm at all, let alone one that is likely to recur.  In fact, the evidence shows that the City *provides* reasonable accommodations or gives appropriate referrals.  CF 3, 20.

Accordingly, Plaintiffs' reference to *McGary v. City of Portland*, 386 F.3d

5

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1259 (9th Cir. 2004) is absolutely misplaced. As an initial matter, in *McGary,* Portland's Office of Planning and Development Review (OPDR) inspected plaintiff's home and determined that the amount of trash and debris in his yard constituted a nuisance, and ordered him to remove same 16 days after a notice to remove was sent. *Id.* at 1260. In response, plaintiff requested (on more than one occasion) a reasonable accommodation but was *refused* same. *Id*. Plainly, there is no analogy here where Plaintiffs have neither requested nor been refused any accommodation from the City. Also, the plaintiff in *McGary* was burdened by governmental action (Portland, among other things, charged plaintiff for the cost of debris removal and assessment, and placed a lien on his home for that amount). Plaintiffs cannot draw any analogy to the facts of this case, where the City has not taken any action to "burden" Plaintiffs at all.

Ironically, in opposing the City's motion to dismiss, Plaintiffs argued that their complaint "is not about the City of Los Angeles guaranteeing the safety of people with disabilities." Yet now, these many months later, Plaintiffs certainly suggest, strongly, that it is unacceptable for Plaintiffs to take responsibility for their own preparedness and safety in the event of a disaster. *See* Motion at 13:8; *see also* Declaration of June Kailes, ¶ 43 (declaring that City has "responsibility to safeguard" lives). However phrased or alluded to, the City is not a guarantor of Plaintiffs' safety at any time and certainly not in the event of a disaster. *See, e.g., DeShaney v. Winnebago Cty. Dep't of Social Services,* 489 U.S. 189, 195 (1989) (Due Process Clause of the Fourteenth Amendment limits the State's power to act and not as a guarantee of safety and security).

It remains a fact that Plaintiffs have not proven *actual discrimination* on the basis of a disability. Truly, it appears that many of Plaintiffs' allegations more closely mirror the plaintiff's claims in *Weinreich*. In that case, the plaintiff, Robert E. Weinreich, was a person with a disability who could not take advantage of a program offering reduced fares because he needed a medical recertification but could not afford it. *Weinreich¸* 114 F.3d at 978. He sought, and was refused, an exemption from the recertification requirement. *Id*. The Ninth Circuit held that the "district court correctly concluded that

6

the MTA had no obligation under the ADA or the Rehabilitation Act to 'reasonably accommodate' Weinreich's financial inability to provide updated recertification of his disability." *Id.*

Plaintiffs' claims that seek to put the onus of emergency *preparedness* on the City (as opposed to themselves, where it belongs) is reminiscent of *Weinreich*, aside from the fact that no accommodation has been requested or refused here, because the City is under no obligation to accommodate financial or other non-disability issues. For instance, Plaintiffs assert that individual evacuations for persons with disabilities "are not only needed when they are trapped in their homes but also if they cannot negotiate stairs and elevators are not working, if they cannot get into their wheelchairs without assistance or their mobility equipment has been damaged by the emergency, or if there is debris in their path of travel making it impossible for them to navigate." Motion at 14:9. Firstly, there is no evidence that this has happened or will happen in the City. Secondly, the scenario described by Plaintiffs, and the alleged hypothetical City response, has no nexus to *disability* discrimination (because the City's disaster *response* is driven by the disaster, not by *reason* of a disability).

Even more telling is the Plaintiffs' claim that the City "must provide accessible transportation during a mass evacuation." Motion at 15:7. No one disputes that transportation the City provides must be accessible (and it is, CF 12), but if the City leaves "individual residents to evacuate themselves," Motion at 15:5, then this is no different than leaving Mr. Weinreich to get his own medical recertification. It is simply not discrimination on the basis of disability.

As was the case when this action was commenced, Plaintiffs have not alleged any actual discrimination. Plaintiff Harthorn has alleged she is a resident of the City who uses a power wheelchair for mobility. Motion at 16:16. What she has not alleged is that she has been discriminated against by the City with regard to its emergency plans on the basis of her disability. CF 4-12. Similarly, this is all the clearer here where there is no evidence that the City refused to make any requested accommodation. As shown, there is

7

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

no "meaningful access" issue here.

By the same token, it is clear that the City's broad, strategic plans at issue would be "fundamentally altered" should they be "rewritten" in the manner suggested by Plaintiffs. *See Olmstead v. Zimring*, 527 U.S. 581, 604 (1999). Whatever plans and procedures the City has must allow operational entities, like the police and fire departments, the ability to address rapidly evolving situations and scenarios where "on-the-ground" decision making is essential to the preservation of life, property and incident stabilization. Thus, the specificity that Plaintiffs' appear to seek would not allow for the necessary flexibility needed by the Incident Commander who has the best knowledge of the situation as he or she is at the scene and directly involved with the particular incident. CF 21. Accordingly, the City's emergency plans need to remain general and strategic, rather than specific and tactical, in order to effectively respond to various and fast-moving situations.

Plaintiffs are free to prepare themselves to receive the same benefits, whatever they may be, as everyone else in the City in the event of a disaster. And if, heaven forbid, there is a disaster that affects Plaintiff Harthorn, the evidence demonstrates that, if requested, she would be given a reasonable accommodation. CF 3, 20. Plaintiffs have simply not met, and cannot meet, their burden and shown they were actually denied the benefits of the City's actual services, and that such a denial is by reason of their disabilities.

### c. Plaintiffs Are Not Entitled To Summary Judgment Under State Law

For all the reasons discussed above, including the existence of disputed material facts, this Court should deny Plaintiffs' motion under state law. *See* Cal. Code of Civ. Pro. § 437c(g).

Substantively, the claim that the City is not providing Plaintiffs with the emergency plan that they would like is not the same as being denied "full and equal access" to that which the City actually has (plus the evidence here that Plaintiffs, in

8

reality, have not been denied anything). And for the reasons discussed herein with regard to Plaintiffs' claim under the ADA, they likewise have no claim under the California Civil Code.

Plaintiffs fare no better under the California Government Code. As explained, there is no "full and equal" access issue presented by Plaintiffs, and they are not entitled to anything pursuant to Section 504. Accordingly, the Plaintiffs have no claim under California Government Code section 11135.

### d. Plaintiffs' Claim That There Is A "Remedy" Is False

It is also worth noting that Plaintiffs seek to establish liability while "postponing the determination of relief." Motion at 25:13. While the City submits Plaintiffs have not demonstrated liability, it also seems clear that no injunction could issue. The reason for this is because it is utterly unclear as to what conduct Plaintiffs seek to enjoin. *Celano v. Marriott Int'l, Inc.*, 2008 U.S. Dist. LEXIS 6172 is illustrative in this regard. In that case, the plaintiffs alleged that the defendant's failure to provide "accessible" or "single-rider" golf carts to allow disabled persons to play golf at it courses violated the ADA. *Id.* at *2. The facts of that case, where people with disabilities were actually not permitted to play golf, are inapposite to those here, where people with disabilities have alleged no *actual* exclusion or harm. Of course, the Marriot in *Celano* could be ordered to provide accessible golf carts as a reasonable accommodation (under the law). But here, the City cannot be ordered to provide a reasonable accommodation to non-discriminatory strategic *plans*.

It yet looks as if the Plaintiffs are seeking an improper advisory opinion. *See, e.g., Gilligan v. Morgan*, 413 U.S. 1 (1973). In *Gilligan,* the plaintiffs, students at Kent State University, sought injunctive relief against the Governor of Ohio to restrain him from prematurely ordering National Guard troops to duty in civil disorders, as well as an injunction to restrain leaders of the National Guard from "future violation of the students' constitutional rights." *Id.* at 3. Following the District Court's dismissal of the suit on the basis that the complaint failed to state a claim upon which relief could be granted, the

9

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Court of Appeals remanded the case to the District Court with directions to resolve the following question:

> "Was there and is there a pattern of training, weaponry and orders in the Ohio National Guard which singly or together require or make inevitable the use of fatal force in suppressing civilian disorders when the total circumstances at the critical time are such that nonlethal force would suffice to restore order and the use of lethal force is not reasonably necessary?
> *Id.* at 4.

The Supreme Court reversed, holding, *inter alia*, that the relief sought by plaintiffs would require judicial review by a federal court over the training, weaponry, and orders of the National Guard, which are areas of responsibility vested in the legislative and executive branches of the government; and that the plaintiffs were seeking an advisory opinion rendering the claims and proposed issues on remand nonjusticiable. *Id.* at 10.

The Plaintiffs here seek similar nonjusticiable relief, asking this Court to review the City's plans with regard to future disaster relief (and where the evidence shows the City provides reasonable accommodations). CF 3, 20. In sum, Plaintiffs have not presented any claim where an injunction could reasonably issue.

///
///
///

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## IV. CONCLUSION

For the reasons set forth, the City respectfully submits that the Plaintiffs' motion for summary judgment should be denied in its entirety.

DATED: August 18, 2010    CARMEN A. TRUTANICH, City Attorney
GARY G. GEUSS, Chief Assistant City Attorney
LAURIE RITTENBERG, Assistant City Attorney
GABRIEL S. DERMER, Deputy City Attorney

By_____/s/_____
GABRIEL S. DERMER
Deputy City Attorney

Attorneys for Defendant CITY OF LOS ANGELES

11

DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT