DISABILITY RIGHTS ADVOCATES
SID WOLINSKY (SBN 33716)
swolinsky@dralegal.org
MARY-LEE SMITH (SBN 239086)
msmith@dralegal.org
KARLA GILBRIDE (SBN 264118)
kgilbride@dralegal.org
2001 Center Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
Fax: (510) 665-8511; TTY: (510) 665-8716

DISABILITY RIGHTS LEGAL CENTER
PAULA PEARLMAN (SBN 109038)
Paula.pearlman@lls.edu
SHAWNA L. PARKS (SBN 208301)
Shawna.parks@lls.edu
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-1031
Fax: (213) 736-1428; TTY: (213) 736-8310
*Attorneys for Plaintiffs*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED,<br><br>          Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,<br><br>          Defendants. | **Case No.: CV 09-0287 CBM (RZx)**<br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br>*[Plaintiffs' Motion to Strike Declarations filed concurrently]*<br><br>Hearing Date: September 27, 2010<br>Time: 11 a.m.<br>Courtroom: 2<br><br>Action Filed: January 14, 2009<br>Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

I.    Introduction .................................................................................................1

II.   The City Has Not Met Its Evidentiary Burden and the Facts of the Case Remain Undisputed. ..............................................................................2

      A.    In Attempting to Dispute Plaintiffs' Facts, the City Fails to Create Any Genuine Issue For Trial. ...................................................3

            1.    The City Raises Only Illusory Disputes for the Vast Majority of Plaintiffs' Uncontroverted Facts. ...................................3

            2.    The City Relies on Evidence that Is Conclusory or Not Probative and Thus, Insufficient to Challenge Summary Judgment. ...............5

      B.    The New Facts Raised by the City Are Immaterial. .............................7

            1.    Personal Emergency Preparedness Is Immaterial to the City's Legal Obligations to Persons with Disabilities. .....................8

            2.    The City's Allegations About the Named Plaintiffs' Experiences Are Immaterial to Whether They Have Been Denied Meaningful Access. ..................................................................................8

            3.    The City's Provision of Reasonable Accommodations at the Time of an Emergency Is Immaterial to Plaintiffs' Claims. .................10

      C.    The City Has Failed to Demonstrate that Specificity in Planning Would Fundamentally Alter Its Emergency Preparedness Program. .............12

III.  Plaintiffs Are Entitled to Judgment as a Matter Of Law. .............................12

      A.    An Emergency Preparedness Program Is Not "Aspirational" and Can Be Viewed in Its Entirety. .......................................................13

      B.    Crowder and Rodde Are Analogous as the City Takes "Action" by Administering Its Emergency Preparedness Program. .......................14

      C.    The City's Challenge to McGary Does Not Eliminate Its Obligation to Provide Reasonable Accommodations for Its Emergency Preparedness Program. .......................................................................................15

      D.    The City Is Discriminating Against Plaintiffs Based on Disability....17

IV.   The Proposed Remedial Approach Is Well-Tested. .....................................19

V.    Conclusion .................................................................................................19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Choate*,
    469 U.S. 287 (1985) ...................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................2, 6, 8

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...........................................19

*Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*,
    179 F.3d 725 (9th Cir. 1999) ........................................................................8

*Casey v. Lewis*,
    4 F.3d 1516 (9th Cir. 1993) ..........................................................................5

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) ......................................................................14

*Dadian v. Village of Wilmette*,
    269 F.3d 831 (7th Cir. 2001) ......................................................................12

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) .......................................................................................19

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993) ............................................................................5

*Henrietta D. v. Bloomberg*,
    331 F.3d 261, 282-83 (2d Cir. 2001) *cert. denied*, 541 U.S. 936 (2004) ......................16

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ........................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .....................................................................................2

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ...............................................................16, 18

*MGM Grand Hotel, Inc. v. Imperial Glass Co.*,
    65 F.R.D. 624 (D.Nev. 1974), *rev'd on other grounds*, 533 F.2d 486 (9th Cir., 1976),
    *certiorari denied* 429 U.S. 887 (1976) ....................................................12

*Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*,
    259 F.3d 1063 (9th Cir. 2001) ......................................................................3

*Olmstead v. Zimring*,
    527 U.S. 581 (1999) ...................................................................................16

*Orsini v. O/S Seabrooke O.N.*,
    247 F.3d 953 (9th Cir. 2001) ........................................................................5

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

*Pierce v. County of Orange,*
   526 F.3d 1190 (9th Cir. 2008).............................................................16

*Rodde v. Bonta,*
   357 F.3d 988 (9th Cir. 2004)..............................................................14

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 1993)...................................................................6

*Tennessee v. Lane,*
   541 U.S. 509 (2004)............................................................................12

*UA Local 343 United Ass'n of Journeymen et al. v. Nor-Cal Plumbing, Inc.,*
   48 F.3d 1465 (9th Cir. 1994).................................................................2

*Weinreich v. Los Angeles County Metro. Transp. Auth.,*
   114 F.3d 976 (9th Cir. 1997)..............................................................17

*Yeskey v. Pa. Dep't of Corr.,*
   118 F.3d 168 (3d Cir. 1997)..................................................................8

**Federal Regulations**

28 Code of Federal Regulation § 35.130(b)(7).......................................13

28 Code of Federal Regulation § 35.150...............................................13

**Federal Rules**

Federal Rules of Civil Procedure, 56(e)(2)............................................2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

# I.    INTRODUCTION

Defendant City of Los Angeles' opposition to Plaintiffs' motion for summary judgment is notable in that (1) the City does not actually dispute the vast majority of Plaintiffs' proposed uncontroverted facts and (2) the City offers no valid reason why it should be allowed to deny persons with disabilities meaningful access to its emergency preparedness program.

The City's failure to actually dispute Plaintiffs' proposed uncontroverted facts is most evident in Defendant's Statement of Genuine Issues.  The purpose of such a statement is to assist the Court in determining which facts are undisputed (and which are not) and if there is any admissible evidence to contradict the moving party's alleged facts. Both purposes are seriously undermined, if not wholly subverted, if a defendant is allowed to represent that an alleged fact is "disputed" because it "suggests" that defendant may have discriminated, and if evidence can be represented as "supporting" when it does not actually controvert the alleged fact.  Yet this is precisely what the City does for 148 of the 193 facts it claims to dispute.  Such a response is, and should be treated as, a failure to dispute the proposed facts in good faith.

The purposes of a Statement of Genuine Issues are further undermined when the evidence offered is purely conclusory or not probative and thus, insufficient to raise a triable issue.  Here the City relies solely on nine new declarations instead of testimony from any one of the 15 depositions of its own employees or the thousands of pages of documents produced in this case.  These declarations are riddled with statement after statement lacking factual support and frequently offer non-probative anecdotal evidence. Such declarations cannot preclude the entry of summary judgment for Plaintiffs.[1]

In the end, the extraordinary admissions from all levels of the City's bureaucracy, confirming the City's failure to provide meaningful access for persons with disabilities to its emergency preparedness program, cannot be overcome by using the word "disputed"

---

[1] Plaintiffs file concurrently with this reply a motion to strike five of the nine declarations.

but failing to offer any probative contradictory evidence. Since all material facts remain uncontroverted, summary judgment is appropriate.

Moreover, Plaintiffs are entitled to judgment as a matter of law because the City has not established any legal basis for why it should be excused from its obligation to provide meaningful access to its emergency preparedness program.  To the contrary, the City has only proffered an unsupported theory that its emergency plans cannot include the "specifics" of how to save the lives of persons with disabilities in an emergency and that such specifics are unnecessary because the City will simply provide reasonable accommodations, upon request, *at the time of an emergency*.  The City's response is consistent with all of the undisputed evidence presented by Plaintiffs demonstrating that the City has failed and is failing to make adequate efforts *in advance of an emergency* to address the needs of persons with disabilities.  Such a failure constitutes a denial of meaningful access in violation of both federal and state nondiscrimination laws. Accordingly, summary judgment should be granted as to the City's liability.

## II.   THE CITY HAS NOT MET ITS EVIDENTIARY BURDEN AND THE FACTS OF THE CASE REMAIN UNDISPUTED.

When the moving party has filed a motion for summary judgment that is properly made and supported, as is the case here, the burden then falls on the opposing party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Proc. 56(e)(2).  The opposing party's burden of contradicting the movants' evidence on motion for summary judgment is "not negligible." *UA Local 343 United Ass'n of Journeymen et al. v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994).  It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The opposing party can preclude the entry of summary judgment "[o]nly [by raising] disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, such disputes must be "genuine," that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

### A.    In Attempting to Dispute Plaintiffs' Facts, the City Fails to Create Any Genuine Issue For Trial.

Confronted with a series of extraordinary sworn admissions by its own management and employees about multiple deficiencies in addressing the emergency needs of persons with disabilities, the City's attorneys devised several unique strategies to purportedly dispute 193 of Plaintiffs' 243 uncontroverted facts.[2] For 148 of these facts, the City merely creates "illusory disputes" by leaving the fact unchallenged but arguing against its implications and then providing citations in support of its arguments that do not dispute the fact. For the remaining facts, the City relies on conclusory statements or non-probative anecdotal information, neither of which raise a triable issue.

As evidence, the City relies entirely on nine new declarations from City employees. The City ignores all of the facts and admissions in the 15 depositions of the City's own emergency management staff, offering instead declarations from those already deposed and even from persons neither previously disclosed nor deposed. The City also makes no reference to any documents, exhibits or actual data.

### 1.    The City Raises Only Illusory Disputes for the Vast Majority of Plaintiffs' Uncontroverted Facts.

For 148 of the 193 responses in which the City claims to dispute Plaintiffs' facts, the City uses exactly the same inappropriate formulaic response. Faced with a specific fact and multiple citations supporting the fact, the City first represents that the fact is "disputed." Then the City adds "to the extent that it is suggested that…" This boilerplate response is then followed by commentary or argument from the City's counsel, usually denying liability. As "supporting evidence" the City then gives a citation to a declaration. However, the declaration does *not* offer evidence to dispute Plaintiffs' fact. Rather the declaration supports the City's argument (and in some cases does not even

---

[2] The City argues that Plaintiffs' "facts" are really opinions of their own City employees. Plaintiffs do not agree, but to the extent that Plaintiffs may offer "opinions" as undisputed they are not offered as facts for the truth of the matter but as facts that a city employee holds such an opinion. These statements, as well as all other testimony, constitute admissions and admissions by a party in discovery can constitute a basis for summary judgment. *Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066 (9th Cir. 2001).

1    manage to do that).  Thus, for the majority of Plaintiffs' facts, the City's evidence does

2    not contradict the proposed fact but only supports the argument made by the City.

3          For example, Plaintiffs' Fact No. 91 states "[t]he MOU between the City and the

4    Red Cross has never been executed."  The supporting evidence is the sworn deposition

5    testimony of Michael Kleiner, the Director of Emergency Disaster Response for the

6    Greater Los Angeles Chapter of the Red Cross.  Responding should not be rocket science.

7    The MOU either has or has not been executed.  Yet the City represents that this is

8    disputed, stating "Disputed to the extent it is suggested that accommodations will not be

9    made."  Whatever the foregoing statement by the City means, it emphatically does not

10   mean that the MOU was executed.  Moreover, the City offers as "supporting evidence" a

11   sole citation to a paragraph from Angela Kaufman's declaration.  That paragraph,

12   however, says absolutely nothing about the MOU between the City and the Red Cross,

13   and it is wholly inaccurate (and potentially misleading) to say that it is in any way

14   "supporting evidence" for disputing that the MOU was never executed.

15         Similarly, for Plaintiffs' Fact Nos. 130 and 131, Plaintiffs state that there are no

16   documents or plans addressing the needs of persons with disabilities in an emergency.

17   The City states that both facts are disputed even though it can cite to no such documents.

18   Rather, the "supporting evidence" to dispute these facts (i.e. Kaufman Decl., ¶¶ 30-31; ¶¶

19   41-42) does not even address whether the City has such documents or plans.[3]  Instead, the

20   City's evidence is intended to support its argument that it does not discriminate.

21         Repeatedly, the City uses the mantra that the fact is "[d]isputed to the extent it is

22   suggested that the City's response will not be accessible and/or that reasonable

23   accommodations will not be made."  With only slight wording variations, this response

24   on the part of the City is given to over 44 of Plaintiffs' facts.  This formulaic recital by

25   the City does not even try to refute the fact presented.  It is simply a tactic by City's

26

27   [3] In the Kaufman declaration, ¶ 30 discusses the Sayer fire in 2008, ¶ 31 discusses her

28   experiences with the Red Cross, ¶ 41 addresses the role of the DoD and claims that requested
     reasonable accommodations were provided and ¶ 42 discusses complaints.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

counsel that leaves the fact unchallenged, but asserts the City's ultimate argument, that the City's actions are not discriminatory.

### 2. The City Relies on Evidence that Is Conclusory or Not Probative and Thus, Insufficient to Challenge Summary Judgment.

For those facts that the City actually does attempt to dispute, the City relies on conclusory evidence which is insufficient to challenge summary judgment.  Courts have cautioned that where "the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993); *see also Casey v. Lewis,* 4 F.3d 1516, 1527 (9th Cir. 1993)("Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient."); *Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953, 960 n. 4 (9th Cir. 2001)(where facts are "in the form of legal conclusions" or "speculative" the declaration is considered conclusory). This is precisely what the City does here.

To dispute some of Plaintiffs' facts, the City relies on conclusory statements to prove an apparent "contradictory fact."  For instance, Plaintiffs' Fact No. 60 states that "[r]amps that exceed a certain slope are inaccessible to persons with mobility disabilities."  In support, Plaintiffs cite to their nationally-recognized expert, Michael Collins, and the City's own employee, Keith Garcia.  The City disputes and counters that "[i]n reality, minimum variations have no effect as to accessibility."  The City then cites to *non-expert* declarant Ralph Acuna who testifies, without reference to any personal knowledge and unsupported by any factual data (e.g., anecdotal evidence at a minimum), that a manual wheelchair user "will commonly be accompanied by a caregiver to provide mobility accommodations" and "power assisted wheelchairs and scooters can overcome minimum variations." Acuna Decl., ¶ 4.

In other instances, the conclusory evidence has been created solely to dispute one of Plaintiffs' facts.  That is, one City employee is offering declaration testimony to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

1  dispute the deposition testimony of another City employee.[4]  For instance, Robert

2  Freeman states in his declaration that "[t]he [emergency] plans apply equally to all

3  residents…For this reason, the City is as well prepared to deal with everyone, regardless

4  of ability or disability, equally.  I do not believe that the City's plans benefit people

5  without disabilities more than people who are disabled." Freeman Decl., ¶ 12.  This is

6  clearly drafted to try to counter the testimony of James Featherstone, head of the City's

7  Emergency Management Department (and Freeman's boss), that the City is not as well

8  prepared to deal with the needs of people with disabilities in an emergency as it is with

9  the general population. [Plaintiffs' Fact ("PF") 20]  More importantly, Freeman's

10  statements are conclusory and do not create a triable issue.  The testimony is based not on

11  factual data but proffers only conclusions and is also speculative.

12      In a similar vein, the City presents purely anecdotal information which purportedly

13  disputes the admissions of other city employees.  However, this "exception proving the

14  rule" approach is not probative and thus, is insufficient to defeat summary judgment. *See,*

15  *e.g.*, *Anderson*, 477 U.S. at 249-250("If the evidence is merely colorable or is not

16  significantly probative, summary judgment may be granted." (citations omitted)).  The

17  Acuna and Kaufman declarations are prime examples.  For instance, Plaintiffs' Fact No.

18  30 cites to the sworn deposition testimony of four City employees all of whom are

19  directly involved in the City's emergency preparedness program and all of whom agree

20  that "[t]he City has made no changes with regard to the City's emergency preparedness

21  program for persons with disabilities since the filing of this lawsuit in January of 2009."

22  However, Ms. Kaufman states in her new declaration that funding to purchase five

23  portable lifts and 56 evacuation chairs for City facilities "became available and identified

24  after the initiation of this lawsuit." Kaufman Decl., ¶ 25.  Accordingly, the City

25

26  [4] While these technically cannot be characterized as "sham declarations" (because the declarants
    are not contradicting their own prior testimony), case law suggests that declarations designed to
27  contradict other evidence also can be considered "sham" or at the very least, not significantly
    probative. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th
28  Cir. 1993) (affidavit contradicting school district's own interrogatory response).

"disputes" Plaintiffs' Fact No. 30.  The identification of limited funds hardly qualifies as a change in the City's emergency preparedness program and even if it did, the change is not substantial and the evidence is not significantly probative so as to raise an issue for trial.  Another example is Acuna's new declaration statement that the Department on Disability ("DoD") has handed out materials on personal emergency preparedness to representatives from disability organizations attending the DoD's Accessible City Expos as well as to the general public attending the EMD Emergency Preparedness Fairs, including "family members and/or caregivers to people with disabilities." Acuna Decl., ¶ 8.  This fact is used to dispute all of Plaintiffs' facts concerning the lack of community input from disability community organizations. [PF 103, 105, 106, 108]  While it may be true that the DoD hands out materials on personal preparedness at expos and fairs, this is not probative as to whether the City is involving disability community organizations in creating the City's own emergency plans.

When all else fails, the City relies on semantic disputes that produce no real contradiction.  For example, Plaintiffs' Fact No. 1 states that "[p]roviding shelter and mass care for persons forced to evacuate their homes because of an emergency is an essential component of an emergency preparedness program."  Defendant "disputes" this, stating that "[p]roviding shelter is a response and not a preparedness action," citing to Eric Baumgardner who testifies that activation of shelters only happens in response to an emergency. Baumgardner Decl, ¶ 3.  Plaintiffs' fact is not offered to prove that providing shelter and mass care is a "preparedness action."  Rather, it is offered to prove that providing shelter and mass care is one part of an "emergency preparedness program" which Plaintiffs define to include the response and recovery phases of an emergency. The fact remains undisputed that any city in preparing for an emergency will take actions prior to an emergency so that it can "activate" shelters when emergencies occur.

**B.    The New Facts Raised by the City Are Immaterial.**

In opposing Plaintiffs' motion, the City alleges 21 "new facts" that it claims create

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

a genuine issue for trial.  However, courts agree that factual disputes must be material. This excludes "[f]actual disputes that are irrelevant or unnecessary." *Anderson*, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### 1.   Personal Emergency Preparedness Is Immaterial to the City's Legal Obligations to Persons with Disabilities.

The City argues that there is a genuine dispute about the necessity of personal preparedness for emergencies because the City believes it is "critical" and Plaintiffs fail to mention it in their motion. Defendant's Opposition ("Opp.") at 1:11-13.[5]  Personal preparedness plays no part in the substantive law governing this case, namely the ADA and Section 504 of the Rehabilitation Act.  Under either of these laws, discrimination stems from a denial of meaningful access to a program.  Courts have interpreted "program, service or activity" to include "anything a public entity does." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (*quoting Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997), *aff'd*, 524 U.S. 206 (1998)); *see also Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999)(defining "program, service or activity" as "a normal function of a governmental entity").  Personal preparedness is not something a public entity does; it is based on the actions of an individual.  Accordingly, whether a person, disabled or not, is personally prepared for an emergency is irrelevant to whether a public entity provides meaningful access. Indeed Ms. Kaufman testified during her deposition that personal preparedness would not excuse the City from providing for the emergency needs of its residents. *See, e.g.*, Plaintiffs response to City's Fact ("CF") 1.

### 2.   The City's Allegations About the Named Plaintiffs' Experiences Are Immaterial to Whether They Have Been Denied Meaningful Access.

The City argues that the named Plaintiffs in this class action cannot demonstrate

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

---

[5] The City raises this as a "new fact" [CF 1, 2] but also relies on it as a basis to dispute Plaintiffs' facts. *See, e.g.* City's response to PF 182-184.  Because this issue is immaterial, it cannot be used as a basis for dispute.

1  that they have actually been denied the benefits of the City's emergency preparedness

2  program. Opp. at 7:25-27; 8:17-20.  The City then sets forth a variety of facts intended to

3  prove this, all of which are immaterial.

4        First, these facts are immaterial to Plaintiffs' claims of discrimination which are

5  not based on a specific failure of the City to respond to a specific request during a

6  specific emergency.  For instance, the City alleges that Plaintiff Harthorn and class

7  member Navarro have never been to an emergency shelter in the City [CF 6, 16], nor has

8  Plaintiff Harthorn ever contacted the police or fire department and requested assistance

9  during an emergency. [CF 4]  The City also points out that Plaintiff CALIF has been

10 unaffected by the recent fires in the Los Angeles area. [CF 15]  The City previously

11 argued in its motion to dismiss and continues to argue in this opposition that because

12 Plaintiffs have not yet been denied services during an emergency, "Plaintiffs have not

13 presented any evidence that they have been denied a City service" and their claims

14 remain "hypothetical." Opp. at 5:14-16.  Defendant's argument misses the point of this

15 case.  Plaintiffs' allegation, as the Court explained in its order denying Defendant's

16 motion to dismiss, is that "the Emergency Plan is currently defective as it stands." Docket

17 No. 36 at 4:23-24.  This constitutes actual present discrimination, not the threat of future

18 discrimination. *Id.* at 5:6-7.  Plaintiffs offer ample evidence to support this allegation.

19       Second, these facts are immaterial to the extent that they imply that Plaintiffs have

20 not engaged in personal preparedness. [CF 7, 9, 18]  Matters of personal preparedness

21 are, for the reasons discussed above, irrelevant to Plaintiffs' claims.[6]

22       Third, these facts are immaterial to the extent they are intended to imply that the

23 City would have provided a service if it had been requested by the named Plaintiffs.  The

24 City alleges that Plaintiff Harthorn has never inquired as to whether the City could

25 guarantee electricity for her residence during an emergency. [CF 10]  However, the City

26 _____

[6] Ironically, to presumably demonstrate a lack of personal preparedness, the City notes that
27 Plaintiff Harthorn does not know whether City shelters would be accessible in the event of an
emergency. [CF 5]  This is no failing on Plaintiff Harthorn's part but rather because the City
28 itself does not know which of its shelters are accessible. [PF 49, 65, 67]

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

1   offers no evidence from the record to demonstrate that Plaintiff Harthorn would have

2   been guaranteed electricity during an emergency if she had asked.  The City also alleges

3   that Plaintiff Harthorn would like the City to provide transportation "if the need be" [CF

4   11] and then claims that "the City provides accessible transportation." [CF 12]  However,

5   the City offers no evidence that it plans to or does provide accessible transportation

6   *during an emergency*; instead City employees testified to the contrary. [PF 209-212]  The

7   City alleges that Plaintiff CALIF has never complained about the City's emergency

8   preparedness program to the Department of Disability. [CF 17] [7]  Yet the City offers no

9   evidence as to what the DoD would have done.  Finally, the City alleges that CALIF has

10  never requested a presentation from the Fire Department [CF 13] and that the Fire

11  Department offers such presentations to all persons. [CF 14]  However, Plaintiffs have

12  never alleged that the Fire Department is discriminating against them by denying them

13  CERT training.  Ultimately, all of these facts are irrelevant because the City cannot

14  demonstrate it would have provided the requested service or that the service was even

15  wanted.  These facts are also unnecessary as this lawsuit goes far beyond the experiences

16  of the named Plaintiffs.  This is a class action lawsuit, at issue is the City's entire

17  emergency preparedness program and access to it for all class members.[8]

        **3.**      **The City's Provision of Reasonable Accommodations at the Time of an Emergency Is Immaterial to Plaintiffs' Claims.**

19        The City repeatedly makes the assertion that "it makes reasonable

20  accommodations, when requested, in responding to emergencies," Opp at 1:28-2:1, and

21  that in its "actual disaster response," reasonable accommodations "would be made when

22  requested." *Id*. at 3:6-7.  Yet the City also states that it "has not received any reasonable

---

[7] Plaintiff CALIF wrote a letter to the Mayor's office about the City's emergency preparedness program and CALIF's suggestions for improving the program. *See* Plaintiffs' response to PF 241.  As such, it is a misrepresentation that "[t]he City has not received any reasonable accommodation requests for assistance, or complaints, for people with disabilities in its disaster response and recovery efforts." Opp. at 4:12-14.

[8] It is strange that the City now appears to be attacking the named Plaintiffs' standing when in fact the City stipulated to class certification and to both Harthorn and CALIF being class representatives. Docket No. 77.

1    accommodation requests…in its disaster response and recovery efforts." *Id.* at 4:12-14.

2         As a preliminary matter, the only evidence that the City proffers in support of its

3    claim to making reasonable accommodations, which The City cites as support for CF 3

4    and 20, is Ms. Kaufman's conclusory statement that "[a]ny and all requests for

5    reasonable accommodation and assistance were provided *at the time of the incident.*"

6    Kaufman Decl., ¶ 41 (emphasis added).  Ms. Kaufman points to no specific facts that

7    demonstrate this is true.  Ms. Kaufman offers no testimony as to whether this would be

8    true in the future.  Ms. Kaufman certainly does not explain how the City will provide

9    needed accommodations to more than 800,000 people during major emergencies.  Reply

10   Declaration of June Kailes, ¶ 4.  As discussed above, the failure to provide specific facts

11   in support of this conclusory statement is reason enough for it to be disregarded in a

12   summary judgment motion.

13        However, even if true, Ms. Kaufman's testimony is immaterial because it does not

14   address Plaintiffs' claims.  Kaufman's testimony is about reasonable accommodations "*at*

15   *the time of the incident.*"  Indeed the argument throughout Defendant's opposition is that

16   reasonable accommodations will be made "*when responding to emergencies.*"  Plaintiffs'

17   claims of discrimination do not concern individualized reasonable accommodations after

18   disaster strikes but rather reasonable accommodations provided in preparation for (i.e.

19   prior to) an emergency.  Plaintiffs do not want individual persons with disabilities calling

20   9-1-1 after a disaster requesting, for instance, electricity to power their wheelchair while

21   sheltering in place.  Rather, Plaintiffs seek such accommodations ahead of time so that

22   the City plans will have already incorporated the provision of such accommodations.

23   Thus, for example, assistance to persons with disabilities who are sheltering in place after

24   an emergency would be a part of the emergency preparedness program, not something to

25   request after the emergency occurs.  Currently the City's emergency preparedness

26   program does not provide such reasonable accommodations as a part of the program; this

27   is the factual premise for Plaintiffs' claim of discrimination, and the City does not dispute

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

1   it.  It is thus immaterial to Plaintiffs claims that in the past, reasonable accommodations

2   have been provided following an emergency.

3         **C.**   **The City Has Failed to Demonstrate that Specificity in Planning Would**
          **Fundamentally Alter Its Emergency Preparedness Program.**

4

5         The City attempts to assert the fundamental alteration defense, claiming that, in

6   order to achieve the remedial relief sought by Plaintiffs, their plans would have to be

7   rewritten to include too much specificity. Opp. at 8:8-10.  To demonstrate a fundamental

8   alteration, a defendant must show that the modifications would "compromise the essential

9   nature of the program." *Alexander v. Choate*, 469 U.S. 287, 300 (1985); *see also*

10  *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)(modifications would fundamentally alter

11  the nature of the service provided); *Dadian v. Village of Wilmette*, 269 F.3d 831, 839 (7th

12  Cir. 2001)(modification would be "at odds with the purposes behind the rule").  The City

13  has failed to do this.  It is not clear what the City claims the essential nature of its

14  emergency preparedness program is or how the City claims that this essential nature

15  would be fundamentally altered by including specific provisions addressing the unique

16  needs of persons with disabilities.  The City's only supporting evidence is Mr.

17  Baumgardner's declaration which provides no factual data to support its theory that

18  specificity in emergency planning is undesirable. Baumgardner Decl., ¶ 9.  The City has

19  not met its burden to establish this defense.  In contrast, Plaintiffs have presented

20  evidence from two of the nation's leading experts who explain why additional detail is

21  desirable, necessary and consistent with federal guidelines regarding emergency

22  preparedness for people with disabilities. *See, e.g.*, Kailes Reply Decl., ¶¶ 3-4.

23  **III.   PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

24        When the only question is what legal conclusions are to be drawn from an

25  established set of facts, the entry of a summary judgment should be directed. *MGM*

26  *Grand Hotel, Inc. v. Imperial Glass Co.*, 65 F.R.D. 624 (D.Nev. 1974), *rev'd on other*

27  *grounds*, 533 F.2d 486 (9th Cir., 1976), *certiorari denied* 429 U.S. 887 (1976).  Here

28  Plaintiffs have demonstrated that there is no genuine issue as to any of the material facts

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

which establish the City's liability.  In addition, Plaintiffs' legal theories have not been refuted and thus, demonstrate why the undisputed facts entitle them to summary judgment.

### A.      An Emergency Preparedness Program Is Not "Aspirational" and Can Be Viewed in Its Entirety.

As Plaintiffs explained in their moving papers, an emergency preparedness program is composed of various services and activities that a public entity undertakes to mitigate the effects of disasters.  Plaintiffs break these services and activities down into ten essential substantive components.  Plaintiffs offer evidence in the form of testimony from City emergency management employees that *an* emergency preparedness program should include all of these components. [PF 1, 2, 7, 9, 10, 13, 16, 18, 19]  Plaintiffs also offer evidence that the City's emergency preparedness program actually includes all of these ten components. [PF 41-43, 94, 132, 133, 142, 163, 180, 181, 192, 213, 220, 225] Contrary to the City's arguments, these are not "aspirational" components or merely Plaintiffs' opinions. Opp. at 2:18, 23. These are admissions by a party.

The City further argues that its emergency preparedness program need only be accessible when viewed in its entirety. Opp. at 3:1.  As a preliminary matter, the "viewed in its entirety" legal standard applies to physical access for existing facilities. 28 C.F.R. § 35.150.  Plaintiffs do not base their legal theories on this regulation.  Rather, Plaintiffs' legal theory is based on the statutory mandates of the ADA and the reasonable accommodation regulation.[9] 28 C.F.R. § 35.130(b)(7).  In any event, even if the standard cited by Defendant applied, Plaintiffs would still be entitled to summary judgment as a matter of law.  In fact, applying this standard, Plaintiffs need not demonstrate that all of the essential components are inaccessible.  Even if, for instance, temporary housing is accessible, but the remaining essential components are inaccessible, when viewed in its entirety, the emergency preparedness program remains inaccessible to disabled persons.[10]

---

[9] Under Plaintiffs' state law claims, there is no "viewed in its entirety" standard.
[10] By way of example, the City points out that it has surveyed some potential shelter sites and Plaintiffs present no evidence showing that the remaining potential sites are not accessible.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

### B.   *Crowder* and *Rodde* Are Analogous as the City Takes "Action" by Administering Its Emergency Preparedness Program.

The *Crowder* and *Rodde* cases held that a governmental action which "disproportionately burdens people with disabilities because of their unique needs" is actionable under the ADA. *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004)(*citing Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996)).  At issue in both of these cases was a governmental program – the public services offered by the state in *Crowder* and the medical care offered by the County in *Rodde* – which provided benefits to disabled and non-disabled persons alike.  However, because of the action of the governmental entity – the enforcement of a quarantine by the state and the closure of a hospital by the County – the benefits provided to persons with disabilities were lessened or reduced, as compared to the general population, placing a disproportionate burden on them.

The City attempts to distinguish this case on the basis that its emergency preparedness program cannot disproportionately burden persons with disabilities because the City takes no actions in conjunction with that program. Opp. at 6:10-11.  However, in order to have an emergency preparedness program, the City must administer it, which is clearly an action.  The City's argument could be applied in the *Crowder* case where the quarantine itself did not constitute an action but rather a policy.  However, by enforcing the quarantine, the state took action.  Similarly, the City's emergency preparedness program alone is not an action, yet the administration of the program requires action (and an entire City department, the Emergency Management Department, is staffed with people who take such action).  Accordingly, *Crowder* and *Rodde* are analogous to the instant case and demonstrate that the City is denying meaningful access by administering a program that disproportionately burdens disabled persons due to their unique needs.

The City also undertakes countless actions on a daily basis to administer the

---

Plaintiffs do not argue that all shelters must be accessible but rather that the City must identify which shelters are accessible such that it may ensure that there are accessible shelters available in an emergency.  So far, the City's survey has demonstrated that all of the sites surveyed have accessibility "problems." [PF 57]

emergency preparedness program (e.g., drafting plans, inspecting shelters, meeting to discuss the plans, assessing the current plans, coordinating departmental duties) which also disproportionately burden persons with disabilities.  The City's arguments regarding input from the disability community in planning illustrate this point.  The City first claims that failing to include disability community input when it creates its emergency plans cannot constitute a violation of the ADA because persons with disabilities, like other members of the public, can attend meetings, comment on draft plans and otherwise become involved in the planning process. Opp. at 5:4-8.  However, the City's emergency plans are not available in alternate formats which disproportionately burdens persons with vision disabilities. Deposition of James Featherstone (2/3/10) at 15:17-16:3 (Smith Reply Decl., Ex. A).  Then the City argues that no law (ADA included) requires the City to include any group in creating its emergency plans. Opp. at 5:8-10.  However, the City admits that it does not include disability community organizations in creating its plans while it *does* include non-disability organizations. [PF 94, 103, 105, 106]  Not only does this constitute outright exclusion; it also places a disproportionate burden on persons with disabilities as they do not get the benefit of offering their input at the planning stage, which may be why the City's plans lack any consideration of persons with disabilities.

**C.     The City's Challenge to *McGary* Does Not Eliminate Its Obligation to Provide Reasonable Accommodations for Its Emergency Preparedness Program.**

Plaintiffs submit that meaningful access has been denied pursuant to *Crowder* and *Rodde* alone.  However, meaningful access may also be denied by a failure to provide reasonable accommodation.  The City argues that Plaintiffs' legal authority for this theory, *McGary*, is distinguishable because the plaintiff in *McGary* sought and was denied a reasonable accommodation. Opp. at 6:6-7.  However, the request/denial argument is a red herring.  This case, and many others like it, do not hinge on an individualized request and denial model.

That *McGary* involved a request and denial of a reasonable accommodation is

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

irrelevant.  Plaintiffs rely on *McGary*, citing to the Supreme Court in *Olmstead*, for the proposition that a reasonable accommodation claim need not include a "comparison class" that was treated differently. *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004)(*citing Olmstead v. Zimring*, 527 U.S. 581, 598 (1999)).  In *McGary*, the Ninth Circuit held that the district court had erred in finding that in order for the plaintiff to allege discrimination because of his disability, he must demonstrate that his non-disabled neighbor was provided the reasonable accommodation that the plaintiff sought.  Similarly, in *Olmstead*, the Supreme Court rejected the argument that discrimination requires uneven treatment of similarly situated individuals. *Olmstead*, 527 US at 598. (plurality op.)  This legal analysis does not rest on the request and denial of a reasonable accommodation.  Accordingly, even if the City does not provide a particular essential component of an emergency preparedness program to the general population, under *McGary* and similar cases, it may be required to do so as a reasonable accommodation.

Moreover, in the class action context, the request and denial model makes little sense.  In fact, it is not unusual to impose the responsibility to provide a reasonable accommodation on the public entity, which must then proactively modify its program to be accessible to persons with disabilities. *See, e.g.*, *Pierce v. County of Orange*, 526 F.3d 1190, 1219-22 (9th Cir. 2008)(class-wide relief may include reasonable accommodations); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 282-83 (2d Cir. 2001) *cert. denied*, 541 U.S. 936 (2004)(enacting a statute to create a new program constitutes an accommodation).  Here the City admits that it has never done a systematic review of its emergency preparedness program for persons with disabilities. [PF 135, 136]  It further admits that it does not include input from disability community organizations in its planning efforts. [PF 103, 105, 106]  In sum, the City has failed to modify its emergency preparedness program to address the needs of disabled persons.

Ultimately, the City's argument again misses the point.  This case focuses on the existing emergency preparedness program which is currently deficient.  Part of the way it

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

is deficient is that in the thousands of pages of documents detailing how the City will respond to emergencies, there is little to no mention of how to address the needs of persons with disabilities, whether that be in the form of modifying a component that the City already offers (e.g., ensuring that temporary housing is accessible) or in the form of an action to level the playing field (e.g, ensuring power during an emergency).  What precisely the reasonable accommodations must be is not at issue as that is a matter of remedy.  At issue, is the fact that the City has made absolutely no effort to provide such accommodations in its emergency preparedness program.  To meet the unique needs of persons with disabilities, the City must identify the necessary reasonable accommodations in advance of an emergency and make plans to provide them so that persons with disabilities are not left to rely on the City's individualized accommodations request model in the midst of a disaster.

### D.   The City Is Discriminating Against Plaintiffs Based on Disability.

To prove a claim under both the ADA and Section 504, Plaintiffs must demonstrate that the discrimination alleged was by reason of disability. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  Accordingly, where the reasonable accommodation sought is not based on disability, there is no need to provide an accommodation.  In *Weinreich*, the plaintiff could not afford the medical recertification needed in order to demonstrate that he had a qualifying disability which would entitle him to a reduced public transit fare.  He sought a reasonable accommodation waiving the medical certification but the County denied his request.  The court found that "the MTA had no obligation under the ADA or the Rehabilitation Act to reasonably accommodate Weinreich's financial inability to provide updated recertification of his disability." *Id*. at 978.  *Weinreich* is distinguishable from the instant case.  While it is true that disasters affect the entire population, persons with disabilities are likely to be impacted more than non-disabled persons *by reason of their disability*.

For instance, the City claims that the necessity for individual evacuations of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

persons with disabilities has no nexus with disability discrimination.  While disabled and non-disabled persons may become trapped in a building and require assistance from emergency personnel, persons with disabilities have unique needs *due to their disability* (not the disaster) when they attempt to evacuate to shelters.  For instance, persons with mobility disabilities cannot climb stairs (when elevators are not working) while non-disabled persons can.  Persons with mobility disabilities may not be able to navigate where paths of travel (e.g., sidewalks, roads) are filled with debris (e.g., rubble, broken pavement, downed tree branches) while non-disabled persons can step or climb over such barriers.  Persons with vision disabilities may not be able to safely evacuate to shelters because debris poses a tripping hazard and may cause them to be disoriented and unable to locate the shelter while non-disabled persons do not face such additional barriers.

Similarly, in a mass evacuation, the City may instruct individuals to evacuate themselves, directing them to evacuate using particular routes.  Because persons with vision disabilities cannot see, they cannot drive.  In addition, some persons with mobility or cognitive disabilities may also not be able to drive.  The inability to drive a vehicle in order to evacuate the City is *due to their disability*.  It is irrelevant whether they could, for instance, afford a car.

Indeed defendants in the *McGary* case attempted to rely on the *Weinreich* logic and argued that the plaintiff's failure to comply with the nuisance ordinance was not due to his disability but rather his financial inability or unwillingness to pay someone else to clean his backyard.  Here the City also argues that the issues are financial and not disability-based.  By this logic, the City would have disabled persons pay for someone to clear their path of travel after a disaster or to hire a cab to evacuate them from the city.  The *McGary* Court cautioned against this logic, finding that the financial argument would be a "self-defeating limitation" on the ADA since a defendant would always argue that a disabled person could hire someone to assist them. *McGary*, 386 F.3d at 1268 n. 5.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204

**IV.    THE PROPOSED REMEDIAL APPROACH IS WELL-TESTED.**

Plaintiffs request, at this time, that the Court only determine whether the City is liable for violation of federal and state disability discrimination laws due to the denial of meaningful access to its emergency preparedness program for persons with disabilities. Plaintiffs request that the remedy for these violations be crafted after the Court makes this determination.  Plaintiffs believe that it would be beneficial to both parties if the City participates in the crafting of the remedial relief.  The City does not reject this approach but argues instead that an injunction cannot issue against the City.[11]  Courts, however, routinely issue injunctions against public entities, ordering relief similar to that which Plaintiffs seek. *See, e.g., Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)(injunction issued against California Board of Prison Terms requiring the Board to work with Plaintiffs in developing new policies and procedures to comply with the ADA).  The remedial approach that Plaintiffs propose is well-tested and well within the power of the Court.

**V.    CONCLUSION**

Plaintiffs respectfully request that this Court grant Plaintiffs' motion for summary judgment.

DATED: August 27, 2010                    Respectfully submitted,

                                          DISABILITY RIGHTS ADVOCATES
                                          DISABILITY RIGHTS LEGAL CENTER


                                          _____/s/_____
                                          Mary-Lee K. Smith
                                          Attorneys for Plaintiffs


\Server\cases\CALIF.LA\Pleadings\MSJ\MSJ_Reply\Reply_SJ_FINAL.doc

---

[11] The City cites *Gilligan v. Morgan*, 413 U.S. 1 (1973) as support.  However, *Gilligan* stands only for the proposition that the Court should tread lightly when fashioning relief that implicates legislative and executive branches.  Moreover, the facts here are very different from those in *Gilligan*, primarily since the program at issue here does not involve military affairs.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204