CARMEN A. TRUTANICH, City Attorney
GARY G. GEUSS, Chief Assistant City Attorney (SBN 128022)
**LAURIE RITTENBERG**, Assistant City Attorney (SBN 106683)
**GABRIEL S. DERMER**, Deputy City Attorney (SBN 229424)
laurie.rittenberg@lacity.org; gabriel.dermer@lacity.org
200 North Main Street, Room 916
Los Angeles, California 90012
Telephone: 213.473.6850
Facsimile: 213.473.6818

Attorneys for Defendant CITY OF LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED,<br><br>      Plaintiffs,<br><br>  v.<br><br>CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,<br><br>      Defendants. | **CASE NO.:  CV-09-0287 CBM (RZx)**<br><br>**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br><u>Pretrial Conference</u><br>Date: February 7, 2011<br>Time: 2:30 p.m.<br>Ctrm: 2<br>Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.  INTRODUCTION ..................................................................................... 1

II.  THE CITY'S CONTENTIONS OF FACT ................................................ 1

III.  THE CITY'S CONTENTIONS OF LAW REGARDING PLAINTIFFS' CLAIMS . 4

   1.  Plaintiffs Cannot Establish A Violation Of The ADA Or Section 504 ................... 4

   2.  *Crowder, Rodde* And *McGary* Do Not Support Plaintiffs' Claims ..................... 5

   3.  If Anything, Plaintiffs Seek To Place An Unreasonable Burden On The City To Ensure Their Safety In The Event Of A Disaster ....................... 7

   4.  Granting Plaintiffs' Wishes Would Fundamentally Alter The City's Emergency Plans ........................................................................ 8

   5.  Plaintiffs Cannot Prevail Under State Law ........................................ 9

   6.  No Injunction Could Issue Here ..................................................... 9

IV.  THE CITY'S CONTENTIONS OF LAW REGARDING ITS AFFIRMATIVE DEFENSES .................................................................. 9

   1.  First Affirmative Defense: No Private Cause Of Action ........................ 10

   3.  Third Affirmative Defense: 28 C.F.R. 35.150(a)(1) .............................. 10

   4.  Fourth Affirmative Defense: 28 C.F.R. 35.150(a)(3) ............................ 10

   6.  Sixth Affirmative Defense: Failure To State A Claim Under The ADA .................. 10

   7.  Seventh Affirmative Defense: Failure To State A Claim Under Section 504 ........... 11

   8.  Eighth Affirmative Defense: Failure To State A Claim Under Civil Code Section 54.1 ................................................................ 11

   9.  Ninth Affirmative Defense: Failure To State A Claim Under Civil Code Section 54.3 ................................................................ 11

   10.  Tenth Affirmative Defense: Failure To State A Claim Under Government Code section 11135 ................................................... 11

   11.  Eleventh Affirmative Defense: Failure To State A Claim For Declaratory Relief .. 11

   12.  Twelfth Affirmative Defense: Statute of Limitations ............................ 11

13. Thirteenth Affirmative Defense: Ripeness .............................................. 12

15. Fifteenth Affirmative Defense: Indispensible Parties ............................. 12

18. Eighteenth Affirmative Defense: Acts And/Or Omissions Of Others .................... 12

23. Twenty-Third Affirmative Defense: Standing .......................................... 12

24. Twenty-Fourth Affirmative Defense: No Attorneys' Fees ..................... 12

25. Twenty-Fifth Affirmative Defense: Laches ......................................... 13

26. Twenty-Sixth Affirmative Defense: Waiver ........................................ 13

28. Twenty-Eighth Affirmative Defense: Mootness ................................... 13

V.    BIFURCATION OF ISSUES ............................................... 13

VI.   ANTICIPATED EVIDENTIARY ISSUES .......................... 13

VII.  JURY TRIAL ............................................................................ 13

VIII. ATTORNEYS' FEES ............................................................ 13

IX.   ABANDONMENT OF ISSUES ............................................. 14

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES

**Cases**

*Ascon Properties, Inc. v. Mobile Oil Co.,* 866 F.2d 1149 (9th Cir. 1989) ........................10

*Bird v. Lewis & Clark College*, 303 F.3d 1015 (9th Cir. 2002) ....................................6, 9

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...........................................................6

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) ....................................................5, 6

*Deck v. City of Toledo*, 76 F. Supp.2d 816 (N.D. Ohio 1999) .........................................10

*DeShaney v. Winnebago Cty. Dep't of Social Services,* 489 U.S. 189 (1989) ...................7

*Gilligan v. Morgan*, 413 U.S. 1 (1973)..............................................................................9

*Huezo v. L.A. Cmty. College Dist.*, 2008 U.S. Dist. LEXIS 81520 (C.D. Cal. 2008).......10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2000)...................13

*K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (N.D. Cal. 2007) ......11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................6

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) .............................................7

*Olmstead v. Zimring*, 527 U.S. 581 (1999)........................................................................8

*P.N. v. Seattle Sch. Dist.*, 474 F.3d 1165 (9th Cir. 2007)...............................................13

*Pickern v. Holiday Quality Foods*, 293 F.3d 1133 (9th Cir. 2002) .................................11

*Thomas v. Union Carbide Agric.l Prods. Co.*, 473 U.S. 568 (1985)................................12

*Weinreich v. Los Angeles County Metro. Trans. Auth.*, 114 F.3d 976 (9th Cir. 1997) ....5-7

**Statutes**

42 U.S.C. § 12205 ...........................................................................................................13

Cal. Civ. Code § 54 ...........................................................................................................9

Cal. Gov. Code § 11135 .....................................................................................................9

**Regulations**

28 C.F.R. 35.130 ...............................................................................................................6

28 C.F.R. 35.150 ...........................................................................................................5, 8

**Other Authorities**

Judicial Council of California Civil Jury Instructions, 336.............................................13

## I.      INTRODUCTION

Plaintiffs' case is not now and has never been about any actual discrimination on the part of the Defendant City of Los Angeles ("City") with regard to its emergency plans.  This case concerns the unfortunate fact that people, all people, are likely to be affected by a disaster.  And though the City has plans to, hopefully, cope with disasters, Plaintiffs Audrey Harthorn and Communities Actively Living Independent and Free and All Others Similarly Situated ("Plaintiffs) would like the City to do things "differently" and have purportedly different plans.  Rather than be about any actual discrimination, this case concerns Plaintiffs' opinions (and wishes) that cannot be the bases for any liability against the City under the Americans with Disabilities Act (ADA) or any other law.

## II.     THE CITY'S CONTENTIONS OF FACT

The Plaintiffs contend that the City violates the law by allegedly failing to plan for people with disabilities in the event of a disaster.  The City does not fail to plan for people with disabilities any more than it fails to plan for people without them.  The reason for this is due to the fact that the City emergency "plans" are neither specific nor tactical.  Put another way, proper personal planning is critical to a person's ability to survive and minimize long-term effects associated with any disaster.  For instance, a non-disabled person who has not taken any steps to prepare for a disaster may not fare as well in that disaster as a person with disabilities who is well prepared.  The City, it should be obvious, does not (and cannot) "personally plan" for anyone.

The City is under a legal (and moral) obligation not to discriminate against people with disabilities in its emergency plans and response.  The City's emergency plans and response do not discriminate.  In terms of planning, the City does have a number of "emergency plans," though these are designed to save lives, protect property and return the City to normal service levels.  The plans are not designed to assist individual City residents, nor do they operate as tactical plans.  The plans, which cannot guarantee success, identify areas of responsibility for various City agencies.

Perhaps more importantly, in terms of its response, the City's Department on

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Disability ("DoD") represents all disability stakeholders in the City.  A core function of the DoD is to provide reasonable accommodations, upon request, to individuals with disabilities.  The DoD, in collaboration with the City's Emergency Management, Police, Fire Departments and other City Departments, works to allow persons with disabilities to access any program, service or activity that the City provides on a daily basis, not just in an emergency.  The DoD has been heavily involved in issues of disaster, emergency management and inclusion of people with disabilities, including collaboration with community based organizations, since at least 1997.

Additionally, the meetings for both the City's Commission on Disability and its Emergency Management Committee are open, and anyone who wishes to may attend and become involved if they so desire.  Anyone, including a person with disabilities, is welcome to provide input into City government.

The City, through its DoD, have made such reasonable accommodations in the past.  For example, during the City's response to the Sayre wildfire in 2008, the DoD engaged the paratransit provider to establish a drop-off/pick-up point at the local assistance center, obtained equipment and assisted victims with replacement equipment from the California Public Utilities Commission, worked with the Federal Emergency Management Agency ("FEMA") liaison in identifying individuals who had lost durable medical equipment, and assisted in having resources and staff available from the City's Department on Aging.

Of course, the existence of the DoD does not and cannot relieve people with disabilities from making effective personal plans.  So, for instance, though the DoD has access to and contracts with vendors that can assist in times of need, people still need to ensure they include in their personal emergency kits whatever devices, medical equipment, supplies and medications they may need.

Similarly, communities and their members should become trained in search and rescue and basic first aid (including CPR) to provide assistance during emergencies.  This is the reason the Los Angeles Fire Department ("LAFD") set out to develop the leading

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  program in the nation for community response – Community Emergency Response

2  Training ("CERT").  This program has been crucial in many events as individual

3  members of the public have supported first responders while they attempt to save lives.

4  Because of the size of the City (with approximately 4,000,000 residents at night, and

5  approximately 10,000,000 people in the City during the day), local (and probably any)

6  government staff cannot locate and assist each individual who may have a problem

7  following a disaster.

8          In addition, the City's emergency plans comply with both the National Incident

9  Management System ("NIMS") and the Standardized Emergency Management System

10 ("SEMS").  So, depending on the scale of the disaster, the City may well not have the

11 capability to meet the emergency needs of its citizens and will rely on county, state and

12 federal resources.

13         Against this factual backdrop, the Plaintiffs have presented a certain wish-list, of

14 sorts, in terms of what the City "should do" to "not discriminate" against people with

15 disabilities.  The City disagrees with this list.  For example, the Plaintiffs have contended

16 that the City is required to stockpile medications in the event that people with disabilities

17 need them after a disaster, while the City absolutely disputes this contention, and asserts

18 that it is not obligated by the ADA or any other law to provide personal assistive devices

19 or medications to anyone (the City does not even have a public health department; the

20 County does).

21         The City also disputes that it should have detailed plans, in advance, for its

22 responders.  Flexibility and professional discretion are needed by these responders in

23 order to provide the right type of assistance to all people during an emergency.  The

24 City's plans are not so specific so that tactical/operational entities are not precluded from

25 addressing situations where emergency decision-making is necessary.  To wit, in actual

26 emergencies, incident commanders in the field determine what actions should or should

27 not be taken.  And the City's police and fire personnel (approximately 10,000 and 3,500

28 people, respectively) are all trained and prepared to interact and assist people with

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

disabilities in a variety of situations, including emergencies.

As emergency shelters have been an issue in this case, the City contends that the Red Cross provides shelter care (but not physical access) during a disaster.  For physical access, the City has identified 50 Recreation and Parks' facilities with improved physical accessibility in compliance with the ADA; though, the City does not pre-designate shelter sites for a variety of reasons, primarily based on not knowing which shelters may be viable after a given incident.  The City has surveyed possible shelter sites, and continues to do so, for compliance with the ADA Accessibility Survey; and also utilizes "quick-check" surveys to provide overviews of facilities to determine whether they are viable sites, with or without alterations.

Finally, in terms of the named Plaintiffs and their allegations of discrimination, Plaintiff Audrey Harthorn has never contacted, let alone been mistreated by, the City's police or fire department or requested any assistance in the event of an emergency, nor has she ever been to an emergency shelter in the City.  The same holds true for Plaintiff CALIF, as it has never requested that the City give a presentation on personal emergency preparedness to its consumers, nor has its executive director ever gone to, or been discriminated against at, an emergency shelter in the City.

### III.   THE CITY'S CONTENTIONS OF LAW REGARDING PLAINTIFFS' CLAIMS

#### 1.   Plaintiffs Cannot Establish A Violation Of The ADA Or Section 504

"To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability.*  Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the

4

benefits of the program *solely by reason of his disability*; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis in original; citations omitted).

As explained, Plaintiffs would like the City to have a different plan, and even do things differently, but they cannot show that they were excluded or denied the benefits of an actual City service, program or activity.  The Plaintiffs were not excluded or denied anything; rather, they would like a *different* service provided to them (such as the provision of medication after a hypothetical emergency).  Thus, their claims must fail.

Aside from Plaintiffs' claims being premised on scenarios and/or opinions that are not based on actual City services, the City's actual emergency plans are absolutely accessible when viewed in their entirety. *See* 28 C.F.R. 35.150(a).  For instance, even if not "perfect," the City has identified a number of potential shelter sites for accessibility.

## 2.     *Crowder, Rodde* And *McGary* Do Not Support Plaintiffs' Claims

The City has shown that its actual response to actual disasters is nondiscriminatory, and that reasonable accommodations have and will be made.  Plaintiffs have relied on *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) and *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004) to support their claims that the City has violated the law.

As the City has explained, neither *Crowder* nor *Rodde* is on point or helpful to Plaintiffs.  In *Crowder*, the plaintiffs were visually impaired persons who use guide dogs and sought an exemption from the state's imposition of quarantine on carnivorous animals entering the state. *Crowder*, 81 F.3d at 1481.  In remanding the case so the trial court could determine whether the plaintiffs' proposed modifications were reasonable, the Court found that such a quarantine "effectively precludes visually-impaired persons from using a variety of public services, such as public transportation, public parks, government buildings and facilities, and tourist attractions, where humans or animals are inevitably present." *Id*. at 1485.  Importantly, the "evidence produced in support of the parties' motions for summary judgment established that the state's quarantine requirement denies visually-impaired persons the ability to make meaningful use of

services the state provides." *Id.* at 1482.

The evidence and analysis in *Rodde* was similar. There, the plaintiffs challenged the County's decision to shut a County hospital dedicated primarily to providing inpatient and outpatient rehabilitative care to disabled individuals. *Rodde*, 357 F.3d at 990-91. As in *Crowder*, there was evidence presented by the *Rodde* plaintiffs that closing the hospital represented a government action having a disproportionate burden on people with disabilities. *Id.* at 991-92.

Here, by contrast, the City has not taken any action which disproportionately burdens people with disabilities or anyone. The evidence in this case, unlike those upon which Plaintiffs rely, is that the City has not received any reasonable accommodation requests for assistance, or complaints, from people with disabilities in its disaster response and recovery efforts. The City cannot be liable here where it has not excluded any person from it emergency plans by reason of a disability. *See Weinreich*, 114 F.3d at 978.

So, unlike the plaintiffs in *Crowder* and *Rodde*, Plaintiffs here cannot show that the City provides a service for residents generally that it does not provide for them. Plaintiffs also cannot show that they requested a reasonable accommodation and were refused. *See* 28 C.F.R. 35.130(b)(7). Plaintiffs cannot meet their burden of proof in showing a claim of discrimination on the basis of disability (or anything else). They cannot prove a case of discrimination. They cannot show an actual City service, program or activity for which they have not been reasonably accommodated.

Moreover, the City yet submits that Plaintiffs cannot obtain declaratory or injunctive relief in this action because they cannot demonstrate "'a concrete and particularized' legal harm, coupled with 'a sufficient likelihood that [they] will again be wronged in a similar way.'" *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Just because the City's (nondiscriminatory) plans are not to their liking does not entitle Plaintiffs to any judicial

relief.

This is the reason that *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) is no more helpful to Plaintiffs than *Crowder* or *Rodde*.  In *McGary,* Portland's Office of Planning and Development Review inspected the plaintiff's home and determined that the amount of trash and debris in his yard constituted a nuisance, and ordered him to remove same.  *Id.* at 1260.  In response, the plaintiff requested (on more than one occasion) a reasonable accommodation, but was *refused*.  *Id.*  As shown, there is no analogy here where Plaintiffs have neither requested nor been refused any accommodation from the City.  Also, the plaintiff in *McGary* (and the other cases relied on by Plaintiffs) was burdened by governmental action (charging plaintiff for the cost of debris removal and assessment, for instance, as well as placing a lien on his home), while Plaintiffs here cannot show the City has taken any action to burden them at all.

**3.      If Anything, Plaintiffs Seek To Place An Unreasonable Burden On The City To Ensure Their Safety In The Event Of A Disaster**

Quite the opposite of placing a burden on them, Plaintiffs have suggested that the City has the burden of "safeguarding" them.  As the City has explained, it cannot be a guarantor of – or "safeguard" – Plaintiffs' wellness at any place or time. *See, e.g., DeShaney v. Winnebago Cty. Dep't of Social Services,* 489 U.S. 189, 195 (1989).

As Plaintiffs cannot prove actual discrimination on the basis of a disability, their claims seeking to "get more" are similar to the plaintiff's claims in *Weinreich*.  There, the plaintiff was a person with a disability who could not take advantage of a program offering reduced fares because he needed a medical recertification, but could not afford it.  *Weinreich¸* 114 F.3d at 978.  He sought, and was refused, an exemption from the (financial) recertification requirement.  *Id.*  The Ninth Circuit held that the "district court correctly concluded that the MTA had no obligation under the ADA or the Rehabilitation Act to 'reasonably accommodate' Weinreich's financial inability to provide updated recertification of his disability."  *Id.*

Plaintiffs' claims here, where they seek to be "safeguarded" – though no one else is

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

– are reminiscent of *Weinreich* (aside from the fact that no accommodation has been requested or refused) because the City is under no obligation to accommodate non-disability issues, such as a person's personal plan (like a person's personal finances).

For instance, the Plaintiffs have claimed that the City is required to provide accessible transportation during a mass evacuation.  The City does not dispute that all transportation provided by the City must be accessible, but if people are evacuating themselves, then a person with a disability lacking transportation is not different from a person without a disability lacking transportation and there is just no discrimination on the basis of disability.

### 4.    Granting Plaintiffs' Wishes Would Fundamentally Alter The City's Emergency Plans

Even assuming Plaintiffs can prove any claim of discrimination, further to 28 C.F.R. 35.150(a)(3), the City does not have to take any action that would result in a fundamental alteration to its plans or in an undue financial or administrative burden.  It is clear that the City's broad, strategic plans at issue would be "fundamentally altered" should they be "rewritten" in the manner suggested by Plaintiffs.  *See Olmstead v. Zimring*, 527 U.S. 581, 604 (1999).

For instance, the establishment of a public health department to provide medicine and the hiring of tens of thousands (or more) first responders to provide "priority service" to certain people would unquestionably work a fundamental alteration to the City's broad and strategic plans, and be a financial and administrative burden.  In addition, the degree of specificity apparently sought by Plaintiffs would not allow for the necessary flexibility needed by the incident commanders.

As explained, Plaintiffs cannot prevail herein because they are free (and encouraged) to prepare themselves to receive the same benefits as everyone else in the City in the event of a disaster.  Likewise, Plaintiffs cannot show that they have been denied the benefits of the City's actual services, and that such a denial is by reason of their disabilities.

### 5.   Plaintiffs Cannot Prevail Under State Law

California law also protects people with disabilities against discrimination.  *See* Cal. Civ. Code § 54(a) ("Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places).  A violation of the ADA is also a violation of this section. Cal. Civ. Code § 54(c).

Similarly, California Government Code section 11135 states that, among other things, no person with a disability may be "denied full and equal access" to a program receiving financial assistance from the state.  It also provides that a violation of the ADA violates state law.  Cal. Gov. Code § 11135(b).

Yet, because Plaintiffs cannot prevail under the ADA or section 504, and because they cannot show an actual denial of "full and equal access" for all the reasons set forth above, they also cannot prevail under state law.

### 6.   No Injunction Could Issue Here

Again, even assuming Plaintiffs could prove some type of discrimination, the City submits that the remedy sought would be unworkable given that the issue here concerns plans (and not something more tangible).  This is the reason injunctive relief will not issue absent a "concrete and particularized legal harm, coupled with a sufficient likelihood that [plaintiff] will again be wronged in a similar way." *Bird*, *supra*, 303 F.3d at 1019 (citations omitted).  Here, the City submits that the Plaintiffs are seeking an improper advisory opinion.  *See, e.g., Gilligan v. Morgan*, 413 U.S. 1 (1973).  The relief sought here would appear to require judicial review by a federal court over the training, tactics and response of the City's first responders, in the absence of any evidence that such responders unlawfully discriminate.  Such relief should be deemed nonjusticiable.

## IV.   THE CITY'S CONTENTIONS OF LAW REGARDING ITS AFFIRMATIVE DEFENSES

The City presently intends to pursue the following affirmative defenses.

9

### 1.  First Affirmative Defense: No Private Cause Of Action

The City's defense is valid to the extent Plaintiffs seek to enforce the self-evaluation and transition plan regulations accompanying Title II of the ADA, as there is no private cause of action to do so.  *Huezo v. L.A. Cmty. College Dist.*, 2008 U.S. Dist. LEXIS 81520 at *28 (C.D. Cal. 2008); *see also Deck v. City of Toledo*, 76 F. Supp.2d 816, 823 (N.D. Ohio 1999) ("[T]here is no private right of action to enforce the self-evaluation and transition plan requirements set forth in the regulations accompanying Title II.  Any failure on the part of Defendants to comply with the self-evaluation and transition plan requirements is relevant to this case only to the extent that Plaintiffs are able to demonstrate that such failure bears a causal connection to their claims of discrimination.").

### 3.  Third Affirmative Defense: 28 C.F.R. 35.150(a)(1)

The City's defense is valid if it shows that its service, program, or activity, when viewed in its entirety, is readily accessible to and usable by people with disabilities.  As explained, the City will show that its physical structures satisfy this mandate.

### 4.  Fourth Affirmative Defense: 28 C.F.R. 35.150(a)(3)

The City's defense is valid if it shows that the relief Plaintiffs purportedly seek would result in a fundamental alteration or in undue financial and administrative burdens to the City's emergency plans.  If necessary, the City's evidence will show this, as explained above with regard to the creation of a new City department of public health, for example.

### 6.  Sixth Affirmative Defense: Failure To State A Claim Under The ADA

The City's defense is valid if Plaintiffs' material allegations in Plaintiffs' complaint are accepted as true, no relief could be granted under any set of facts that could be proved consistent with those allegations.  *See Ascon Properties, Inc. v. Mobile Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989).

Plaintiffs' complaint sets forth allegations that the City's emergency plans are discriminatory.  For the reasons discussed above, the Plaintiffs cannot state a claim under

10

the ADA.

### 7.  Seventh Affirmative Defense: Failure To State A Claim Under Section 504

The same analysis applicable to the ADA applies to the City's defense to Section 504 of the Rehabilitation Act of 1973.  For the reasons discussed above, the Plaintiffs' cannot state a claim under Section 504.

### 8.  Eighth Affirmative Defense: Failure To State A Claim Under Civil Code Section 54.1

The same analysis applicable to the ADA applies here, too.  For the reasons discussed above, Plaintiffs cannot state a claim under California Civil Code Section 54.1.

### 9.  Ninth Affirmative Defense: Failure To State A Claim Under Civil Code Section 54.3

Again, the same analysis applicable to the ADA applies here.  For the reasons discussed above, Plaintiffs cannot state a claim under California Civil Code Section 54.3.

### 10.  Tenth Affirmative Defense: Failure To State A Claim Under Government Code section 11135

Here, too, the same analysis applicable to the ADA applies.  For the reasons discussed above, Plaintiffs cannot state a claim under California Government Code Section 11135.

### 11.  Eleventh Affirmative Defense: Failure To State A Claim For Declaratory Relief

Finally, the same analysis applicable to the ADA applies to Plaintiffs' claim for declaratory relief.  As explained above, Plaintiffs have failed to state a cause of action for declaratory relief.

### 12.  Twelfth Affirmative Defense: Statute of Limitations

Plaintiffs filed their complaint January 14, 2009.  The statute of limitations under the ADA and Section 504 applied in California is two years.  *See Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002); *but see K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860, * 9, 10 (N.D. Cal. 2007) (discussing two or

three year statute of limitations).  Any claim of Plaintiffs arising before January 14, 2007 is barred by the statute of limitations.

### 13.  Thirteenth Affirmative Defense: Ripeness

A claim is not ripe if it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas v. Union Carbide Agric'l Prods. Co.*, 473 U.S. 568, 581 (1985).  To the extent Plaintiffs' claims rest on such future events, they are not ripe for adjudication.

### 15.  Fifteenth Affirmative Defense: Indispensible Parties

The City's defense is valid should Plaintiffs seek relief from entities not parties to the lawsuit.  Fed. Rule Civ. Proc. 19.  As explained above, the "City's" emergency plans do not exist in a vacuum, and to the extent the Plaintiffs seek relief relative to non-parties, this defense applies.

### 18.  Eighteenth Affirmative Defense: Acts And/Or Omissions Of Others

The City has a valid defense to the extent it shows the injuries and damages complained of by Plaintiffs, if any, resulted from the acts and/or omissions of others.  For example, as explained, the City's plans and responses are not discriminatory, and proper personal planning is critical to a person's ability to survive and minimize long-term effects associated with any disaster.  In addition, the City cannot guarantee safety, from disasters or anything else, as explained.

### 23. Twenty-Third Affirmative Defense: Standing

The City has a standing defense if it can show that Plaintiffs will not suffer a concrete injury particular to themselves, with actual or imminent harm. *See, e.g., Pickern*, *supra*, 293 F.3d at 1137-1138.  As explained above, Plaintiffs are very unlikely to be injured as a result of any conduct on the part of the City, and certainly not an imminent or actual injury.

### 24. Twenty-Fourth Affirmative Defense: No Attorneys' Fees

Even assuming Plaintiffs prevail, they are not entitled to recover any attorneys' fees under if the City can show it was already taking measures to implement the relief

sought after before this lawsuit was filed.  *See, e.g., P.N. v. Seattle Sch. Dist.*, 474 F.3d 1165, 1170-1171 (9th Cir. 2007).

### 25.  Twenty-Fifth Affirmative Defense: Laches

The City has a defense if there was a lack of diligence by Plaintiffs in bringing these claims, and prejudice to the City as a result.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2000).  The most recent event in Plaintiffs' complaint that occurred in the City was in 1994, five years before Plaintiffs filed their complaint. The City is prejudiced by the inordinate passage of time.

### 26. Twenty-Sixth Affirmative Defense: Waiver

To prove waiver, the City must prove that Plaintiffs knew the City had, for example, aspects of the emergency plans at issue and that Plaintiffs freely gave up their rights complain about such aspects.  *See* Judicial Council of California Civil Jury Instructions, 336.  Here, if the City shows these elements the defense would apply.

### 28. Twenty-Eighth Affirmative Defense: Mootness

To the extent the City proves it is taking actions about which Plaintiffs complain, or that Plaintiffs complain about already resolved issues, those claims would be moot.

## V.   BIFURCATION OF ISSUES

The City does not anticipate moving to bifurcate any issues at trial.

## VI.   ANTICIPATED EVIDENTIARY ISSUES

At this time, the City does not anticipate any evidentiary issues other than those raised in Plaintiffs' motions in limine and the City's oppositions thereto.

## VII.  JURY TRIAL

The City does not demand a jury trial in this case.

## VIII. ATTORNEYS' FEES

The ADA provides for a reasonable attorneys' fee to prevailing parties.  *See* 42 U.S.C. § 12205.

///

///

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## IX.    ABANDONMENT OF ISSUES

The City does not anticipate abandoning any issues at this time.

DATED:  January 14, 2011          CARMEN A. TRUTANICH, City Attorney
                                  GARY G. GEUSS, Chief Assistant City Attorney
                                  LAURIE RITTENBERG, Assistant City Attorney
                                  GABRIEL S. DERMER, Deputy City Attorney


                                  By_____/s/_____
                                      GABRIEL S. DERMER
                                      Deputy City Attorney

                                  Attorneys for Defendant CITY OF LOS ANGELES

14
DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW