DISABILITY RIGHTS ADVOCATES
SID WOLINSKY (SBN 33716)
swolinsky@dralegal.org
SHAWNA L. PARKS (SBN 208301)
sparks@dralegal.org
MARY-LEE SMITH (SBN 239086)
msmith@dralegal.org
Berkeley, CA 94704
Telephone: (510) 665-8644
Fax: (510) 665-8511; TTY: (510) 665-8716

DISABILITY RIGHTS LEGAL CENTER
PAULA PEARLMAN (SBN 109038)
Paula.pearlman@lls.edu
MICHELLE UZETA (SBN 164402)
Michelle.Uzeta@lls.edu
800 S. Figueroa Street, Suite 1120
Los Angeles, CA 90017
Telephone: (213) 736-1031
Fax: (213) 736-1428; TTY: (213) 736-8310

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,<br><br>Defendants. | **Case No.: CV 09-0287 CBM (RZx)**<br><br>**PLAINTIFFS' RESPONSE TO CITY OF LOS ANGELES' FIRST BI-ANNUAL REPORT RE ORDER RE INJUNCTIVE RELIEF** |

## I. INTRODUCTION

Plaintiffs respectfully submit their response to Defendant City of Los Angeles' (the "City") First Bi-Annual Report re Order re Injunctive Relief and the attached letter report of James G. Featherstone dated May 9, 2012 (the "Report"). After reviewing the Report, Plaintiffs are gravely concerned about both the timing and substance of the issues discussed within. Plaintiffs are especially alarmed at the fact that the City has taken no substantive actions on this matter since this Court issued its Order re Injunctive Relief ("Order") seven months ago. This delay is simply unacceptable in light of the deficiencies in the City's current emergency plans that put at risk the safety and lives of more than 800,000 residents of Los Angeles with disabilities.

Through Plaintiffs' repeated meet and confer efforts prior to the filing of these comments, Plaintiffs have obtained some commitments from the City as to next steps for implementation.[1] The details of Plaintiffs' concerns and the City's agreements on these issues are outlined below. *See also* Attachments C (Email from S. Parks to G. Dermer dated June 1, 2012) and D (Letter from G. Dermer to S. Parks dated June 4, 2012).

### A. Failure to Finalize Contract with BCFS and Begin Work on Review and Revision of Plans

Seven months into the implementation period and the City has not executed a contract with the expert, BCFS. Consequently, BCFS has not begun its work in

---

[1] Although Plaintiffs have been able to obtain some commitments from the City, the City has *not* been willing to meet with Plaintiffs about these issues. *See* Attachments A (Letter from S. Parks to G. Dermer dated May 11, 2012) (requesting an in-person meeting with all involved parties to address Plaintiffs' concerns and to avoid further delay and further court involvement) and B (Letter from G. Dermer to S. Parks dated May 31, 2012) (declining to meet with Plaintiffs). In light of the lack of progress to date, this refusal to meet further concerns Plaintiffs. Plaintiffs would hope that in the future, the City will be more responsive to efforts to convene a meeting on this matter and thus more quickly address these issues.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

this matter.  From Plaintiffs' perspective, the contract (and resulting start of the work) should have been accomplished months ago as it is crucial to beginning the process of review and revision of the City's emergency plans.  The City's vague promises regarding the signing of the contract make clear that to date, no contract has been finalized that would allow work by the expert to proceed.  *See* Report at p. 4 ("Following the final legal review [on or about May 14, 2012], the contract will be signed and executed."); Attachment B (as of May 31, 2012, the contract will be signed "in the very near future").  Furthermore, the Scope of Work detailed in the Report anticipates that the first phase of the work will entail development of a project outline, a planned timeframe of each project phase, critical milestones, and the project completion date.  Report at pp. 9-10.  This also should have been done months ago.

Plaintiffs have raised the concern about delay with the City before.  More specifically, Plaintiffs raised concerns regarding the timing of implementation with the City during a dispute resolution teleconference with Judge Wistrich on January 4, 2012.  Plaintiffs understood that at that time, the City was in the process of securing a contract with BCFS and had already sent its emergency plans to BCFS for initial review.  The City has provided no explanation for the additional five month delay.  Although the City's Report purports to list numerous City Council meetings addressing the injunctive relief in this matter, the vast majority of the entries listed actually dealt with the negotiations over attorneys' fees or the City's contemplated appeal of this matter – rather than the work to be done under the Order.  *See, e.g.,* Report at p. 5 (February 6, 2012: "City Attorney Report relative to status of [CALIF] litigation and request for outside council [*sic*] . . . The Committee decided not to appeal and forwarded its decision to the City Council for action."), p. 6 (April 9, 2012: "City Attorney report related to settlement . . . ."), p. 7 (April 16, 2012: "City Attorney report related to settlement discussion . . . .") and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 p. 8 (May 2, 2012: approval of the settlement of Plaintiffs' attorneys' fees and
2 costs).

3 **Resolution:** After negotiation with the City, Plaintiffs have secured an
4 agreement from the City that a contract with BCFS will be signed and provided to
5 Plaintiffs within two weeks from June 4, 2012 – *by June 18, 2012* – and that the
6 work plan will be finalized and provided to Plaintiffs within 30 days after the
7 contract date. *See* Attachments C (Email from S. Parks to G. Dermer dated June 1,
8 2012) and D (Letter from G. Dermer to S. Parks dated June 4, 2012). To the extent
9 that Plaintiffs have questions or concerns about the work plan, the City has agreed
10 to have the parties and experts discuss by email or telephone what concerns
11 Plaintiffs have or additional information that Plaintiffs need, and meet and confer
12 subject to the schedules of those involved. *See id.*

13       **B.**     **Failure to Include the Disability Community**

14       The Order clearly states that "[i]n evaluating and revising the City's current
15 emergency plans, the expert will, among other tasks . . . meet with other
16 governmental and non-governmental representatives (e.g. . . . representatives of
17 community organizations that represent people with disabilities)." Order at 1:15-
18 1:19. The City's Scope of Work document submitted to the Court only
19 contemplates communicating with community organizations *after* the revisions to
20 the plans have already been developed, after Phase 2 is completed. Report at p. 12
21 ("Upon the completion of Phase 2, the Contractor will formulate an effective
22 presentation method to inform stakeholders of the City's emergency plans'
23 revisions . . . .") and ("the Contractor will prepare a presentation to targeted non-
24 operational community stakeholders"). Even these presentations are limited to
25 only two.

26       **Resolution:** The City has agreed that the Scope of Work as originally
27 framed and submitted to the Court does not comport with the Court's Order, and
28 has agreed to revise the contract so that community involvement will occur during

the review revision process.  *See* Attachment B (Letter from G. Dermer to S. Parks dated May 31, 2012).

### C.     Failure to Include June Kailes

The Order further requires BCFS to subcontract with June Kailes to utilize her disability expertise.  Order at 1:7-1:10.  However, to date, there has only been one conversation between Ms. Kailes and BCFS.  The City also failed to include Ms. Kailes in the Scope of Work discussion.  Developing the Scope of Work without seeking Ms. Kailes' input is counter to the terms of the Order.

**Resolution:** After negotiation with the City, it has assured Plaintiffs that Ms. Kailes has been "expressly included in the contract between the City and BCFS" and that "her services are certain to be utilized."  *See* Attachment B (Letter from G. Dermer to S. Parks dated May 31, 2012).

### D.     Use of the Terms "Recommend"

The Scope of Work description repeatedly states that the expert will "recommend" changes.  *See* Report at p. 9 ("The Contractor will review and make recommendations for revision of the City's emergency plans . . . .") and p. 11 ("The Contractor shall review and revise City emergency plans identified in Exhibit M Part A, and provide a comprehensive gap analysis with recommended corrective actions relative to FNSS planning.").  The use of the term "recommend" appeared to Plaintiffs to give the City's Emergency Management Division final say over the revisions and the ability to completely disregard Ms. Kailes' recommendations.

**Resolution:** In response to Plaintiffs' concerns, the City stated that BCFS or anyone can only "recommend" changes to the City (in light of the fact that the City is an public entity), but that the City fully intends on incorporating all of the expert's recommendations.  To the extent any recommendations of the expert are not adopted during the implementation phase, Plaintiffs will evaluate the issue at that time.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### E. Use of the Term "FNSS"

Plaintiffs are also concerned about the use of the term "Functional Needs Support Services" (FNSS) throughout the Report without emphasis or reference to the needs of people with disabilities because "FNSS" may be over-inclusive and does not address the specific protected class at issue. The City has assured Plaintiffs that the term "FNSS" includes persons with disabilities and that BCFS will not produce anything that excludes Plaintiffs. While Plaintiffs believe that more appropriate terminology would be to specifically address the needs of people with disabilities, Plaintiffs are willing to wait until work begins to reevaluate this issue.

## II. CONCLUSION

Plaintiffs have made every effort to address their concerns in advance of the filing of these comments, but remain deeply concerned about the lack of progress to date. The City has now committed to having a signed contract that will allow work to begin no later than June 18, 2012. In the event the City does not provide a signed contract to Plaintiffs by that date, Plaintiffs will request that the Court convene a status conference as soon as it is convenient on the Court's calendar to discuss the status of remedial work on this matter. Plaintiffs will submit a short report to the Court no later than June 19, 2012 indicating whether a status conference is needed.

Dated: June 8, 2012

Respectfully submitted,
DISABILITY RIGHTS ADVOCATES

DISABILITY RIGHTS LEGAL CENTER



_____/s/_____
Shawna L. Parks
Attorneys for Plaintiffs

*Communities Actively Living Independent and Free, et al. v. City of Los Angeles, et al.*
**Plaintiffs' Response to City of Los Angeles' First Bi-Annual Report re Order re Injunctive Relief** 5